[No. H029580. Sixth Dist. July 10, 2007.]

In re VINCENT MARQUEZ on Habeas Corpus.

**COUNSEL**

Arthur Dudley, under appointment by the Court of Appeal, for Petitioner Vincent Marquez.

Bill Lockyer, Attorney General, James M. Humes, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Anya M. Binsacca and Brian G. Walsh, Deputy Attorneys General, for Respondent the People.

**OPINION**

**PREMO, J.**—Petitioner Vincent Marquez allegedly violated conditions of his parole, and was arrested and returned to custody on July 22, 2005. According to time lines agreed to by the State of California in *Valdivia v. Davis* (E.D.Cal. 2002) 206 F.Supp.2d 1068 and set out in *Valdivia v. Schwarzenegger* (E.D.Cal. Mar. 9, 2004, Civ. S-94-0671 LKK/GGH) (*Valdivia*), of which we took judicial notice, a parolee is supposed to receive a probable cause hearing

within 10 business days of the day of receipt of notification of the parole violation charges, and a revocation of parole hearing within 35 calendar days of the parole hold date.[1] When neither happened for petitioner by either of the specified dates (the probable cause hearing was two days late and a purportedly defective revocation hearing was held arguably on the 36th day, one day late),[2] petitioner filed a petition for a writ of habeas corpus on each missed date alleging that he had been deprived of due process and was entitled to immediate release. The Santa Cruz County Superior Court ordered the California Department of Corrections (CDC), now California Department of Corrections and Rehabilitation (CDCR), to show cause. After the hearing, the court granted the writ and released petitioner. The CDCR now challenges the judgment in this court claiming that release is not a remedy for a late probable cause hearing and that petitioner failed to show he was prejudiced by the delay.

## FACTS

On July 22, 2005, the Board of Prison Terms (Board) placed a parole hold on petitioner and he was arrested for auto theft, failure to follow directions, and absconding. On July 25, an administrative probable cause determination was made and petitioner was given a Notice of Parole Revocation Rights and Acknowledgment (BPT 1100) dated July 25, 2005, which stated that petitioner had a right to a probable cause hearing within 10 business days of the notice date (July 25) and a revocation hearing within 35 days of July 22, the date a parole hold was placed on him.

---

[1] The *Valdivia* remedial plan policy outline states that counsel shall be appointed for all parolees beginning at the return to custody assessment (RTCA). An RTCA is the practice by which the responsible officials offer a parolee a specific disposition in return for a waiver of the parolee's right to a preliminary or final revocation hearing or both. Within three business days of a hold being placed on a parolee, the parolee shall be served actual notice of the charges against him or her accompanied by a short factual summary of the behavior; he or she shall be interviewed; and the parolee shall be provided with a written notice of rights regarding the revocation process and timeframes. No later than 10 business days after the parolee has been served with notice of the charges and rights, on the third business day after the placement of the hold, the authorities shall provide a hearing to determine probable cause. A final revocation hearing shall be held on or before the 35th calendar day after the placement of the parole hold.

[2] Petitioner counts the day of his arrest as the first day of the 35-day period, which results in his calculation of 36 days. "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." (Gov. Code, § 6800.) The Board calculates 35 days from the day after the day petitioner was arrested.

According to the remedial plan attached to the stipulated order for permanent injunctive relief in *Valdivia, supra*, Civ. S-94-0671 LKK/GGH, "[o]n or before the 6th business day, the parolee . . . shall be appointed an attorney and the attorney shall be provided with a copy of the revocation packet, which shall contain a signed copy of the notice of charges, notice of revocation of rights, and a completed BPT 1073 [notice and request for assistance at parole proceeding]. [¶] Attorney shall meet with the Parolee, provide the parolee with a copy of the revocation packet, and shall communicate any offer or offers made by the Board of Prison Terms Deputy Commissioner/Parole Administrator prior to the probable cause hearing. [¶] . . . [¶] [At the probable cause hearing], [p]arolee shall be permitted to present documentary evidence and hearsay testimony by way of offer of proof through his or her attorney in mitigation or as a partial or complete defense to the charges and/or the proposed disposition. [¶] . . . [¶] If at the conclusion of the probable cause hearing, the parolee has rejected the offer, parolee shall provide the Deputy Commissioner/Parole Administrator with a list of witnesses he or she would like to call at the revocation hearing. The location of the hearing shall be determined . . . and the Deputy Commissioner/Parole Administrator shall make an independent ADA accommodation determination."

On August 9, 2005, 12 business days after petitioner was arrested, the Board held a probable cause hearing in petitioner's absence. The report of the hearing stated petitioner was represented by Attorney "John Larsen."[3]

On August 11, petitioner filed a petition for a writ of habeas corpus seeking his immediate release from custody on the grounds that he was improperly and unlawfully denied a timely probable cause hearing as to the basis for his alleged parole violation, and that he was denied his due process right to present evidence to contest the parole violation allegations.

Meanwhile, the Board set a revocation hearing for August 19, 2005, 28 days after petitioner was arrested. The summary of revocation hearing and decision (BPT 1103) containing the report of the proceedings on that date stated that the revocation hearing was postponed at the request of an attorney named Martin and that petitioner signed a written waiver. The revocation hearing was finally held on August 26, 2005. According to the BPT 1103, petitioner objected to the timeliness of the hearing, to not being present at the

---

[3] In its petition for rehearing, respondent asks us to correct the name of the attorney who respondent stated in its return was appointed to represent petitioner at the probable cause hearing. Respondent attaches as exhibit B to its petition for rehearing a report of the probable cause hearing which was not part of the original record. This report lists John Larsen as the hearing officer and petitioner's appointed attorney as Holden Green. We grant respondent's motion to augment the record. (Cal. Rules of Court, rule 8.155(a).) Further references to petitioner's probable cause hearing attorney will be to Holden Green.

probable cause hearing, and to his witnesses not being called.[4] All his objections were overruled. Good cause was found as to all three charges.

On August 26, 2005, petitioner filed another petition for a writ of habeas corpus, adding as an additional ground supporting his immediate release from custody that he was improperly and unlawfully denied a timely parole revocation hearing. A third habeas corpus petition was filed on September 15, 2005, but it does not appear in the record. According to the traverse (see *post*), in the third petition, petitioner alleged he was denied his due process right to subpoena witnesses to his revocation hearing on August 26, 2005; he did not receive a timely notice as to the time and date of the hearing and which witnesses would be testifying against him; and he had not received before the August 26 hearing copies of the charges or of the police and parole violation reports to be used against him at the August 26 hearing. The trial court and the parties treated the three petitions as one for purposes of the return, traverse, hearing, and decision.

On October 20, 2005, the superior court issued an order to show cause to the Board, with an expedited briefing and hearing schedule. On November 1, 2005, the Board filed a written return claiming that petitioner was not entitled to any relief. The Board admitted that petitioner did not receive a probable cause hearing within 10 business days, but stated he had received a probable cause hearing even though petitioner "failed to appear and could not be located." Petitioner was then in custody on August 9 in the same building where the hearing was being held. The Board stated that Attorney Holden Green was present and represented petitioner and that Green rejected an offer to settle the matter if petitioner accepted 12 months of incarceration with the ability to earn credits. There is no allegation in the return or factual statement in the record that petitioner met Green or any other attorney before this hearing.

The return stated that petitioner received a completed Notice and Request for Assistance at Parole Proceeding (BPT 1073), a parole violation Charge Report (CDC 1502(b)) and a Request for Witnesses form (BPT 1100(b)). The BPT 1100, Notice of Parole Revocation Rights and Acknowledgement signed by petitioner, states, "I have a copy of the papers and reports checked below," namely, "BPT Form 1073, Notification of Americans with Disabilities Act [*sic*] completed today[;] CDC Form 1502(b), Charge Report[;] BPT Form 1100, Notice of Rights and Acknowledgement[;] Blank Form BPT 1100(b), Request for Witnesses." Only the BPT 1100 is an exhibit to the return. Neither the return nor the Board's briefs give citations for where the others can be found and we have not found them in the record. (See Cal. Rules of Court, rule 8.204(a)(1)(C).)

---

[4] Petitioner also objected on another point listed on the BPT 1103 for August 26, 2005, the ground for which cannot be deciphered from the handwritten report in the record.

Furthermore, the return stated that petitioner's revocation hearing, initially scheduled on August 19, 28 days after his arrest, was postponed at petitioner's request and that he signed a waiver. The waiver also does not appear in the record.

The return stated that petitioner had a revocation hearing on August 26. A BPT 1103 attached as an exhibit to the return lists "D. Johnson" as the hearing agent, an indecipherable name as the hearing officer, an attorney ("Kelly"? "Kilhy"?)[5] as being present, lists defendant's three witnesses by their surnames, noted "DNA" (apparently, "did not appear") opposite their names, and leaves blank the boxes on the form showing that the witnesses were notified of the hearing date and what notification method was used (i.e., letter, memo, phone call, personal contact, subpoena, or teletype).[6] The return stated that petitioner's requested witnesses were informed of the hearing but did not attend. (No copies of written notice to the witnesses, their full names and addresses, return of service, or notes memorializing alternative types of notice and the witnesses' responses to notification appear in the return.)

The return stated that at the revocation hearing, all the allegations were found true, and petitioner was assessed a parole revocation term of 12 months, eligible for credits. This is supported by a BPT 1103 which also lists the findings at the revocation hearing, states that parole was revoked and petitioner returned to custody for 12 months, eligible for credits, and states that the actual hearing took 50 minutes and that writing BPT 1103 took five minutes.

The return states that petitioner received timely notice as to the time and date of the hearing and copies of the police reports and parole violation reports to be used against him at the August 26 hearing on July 25 when he received the BPT 1100. However, the documents petitioner was supposed to have received, the BPT 1073 and the BPT 1100(b), do not appear in the record and petitioner disputed that he ever received them or the reports and other information he was supposed to have received from Green.

---

[5] The Board's various hearing forms show that petitioner was represented at the probable cause hearing which he did not attend by Green, whom he never met; at the August 19 revocation hearing which was continued and in regard to which petitioner denied waiving time by Martin; and finally by Kilhy (?).

[6] An entry on the form under the section "Objections/Basis for Ruling" stated that "P objected to his witnesses not being called. P's witnesses were sent a [illegible] notifying them of the hearing. Objection overruled."

The Board alleged that petitioner made only a conclusory allegation that he received ineffective assistance of counsel at his probable cause and parole revocation hearings, and that these conclusory allegations entitled him to no relief. In addition, the Board claimed petitioner failed to allege or prove prejudice as a result of the two-day delay and that petitioner received the process due when he received his probable cause hearing.

On November 15, 2005, petitioner filed a traverse to the Board's return to the order to show cause.[7] He contested the Board's claim that a revocation hearing was held in his case because "1. They gave petitioner another parolee's attorney. 2. Another parolee's violation report. 3. Another parolee's parol[e] officer. 4. Another parolee's parol[e] violation charges. 5. Did not have petitioner's prison file. 6. Did not have petitioner's parol[e] violation record." Petitioner claimed these allegations are supported by a tape of the proceeding, which the Board refused to provide petitioner in violation of *Valdivia, supra*, Civ. S-94-0671 LKK/GGH, stipulated order for injunctive relief. At the hearing on the writ petition, the Board did not deny the allegations concerning defects in the hearing or denial of the tape of the proceeding to petitioner. The traverse added that "at no time did petitioner waive time" and that he was in custody since his July 22, 2005 arrest, and that the parole violation charges were the sole reason for his incarceration. He was in his cell all day on August 9.

In the traverse, petitioner also denied ever being appointed counsel or meeting appointed counsel for a probable cause hearing; denied that a probable cause hearing was held by the Board; denied that counsel waived time; and denied that the revocation hearing was held within 35 calendar days. He claimed that he was denied effective assistance of counsel because he "never met attorney [Holden Green] to this date [November (illegible: 7 or 8?), 2005]," and that Green did not provide him with any documentation about the location, date, time, findings, and name of the commissioner who conducted the hearing.

Petitioner also claimed that he was prejudiced because, at a properly conducted probable cause hearing, a parolee could meet his attorney, give the attorney and the commissioner the names and addresses of witnesses to

---

[7] The Board moved to strike the filing on the basis that petitioner was represented by counsel who should have prepared the traverse. However, the trial court stated that defense counsel had not been appointed to represent petitioner at the time petitioner filed the traverse. The court denied the motion to strike and allowed defense counsel to adopt the filing as his own.

subpoena for the revocation hearing, and counsel and the parolee could receive copies of police reports, parole violation reports, the exact charges to defend against, names of witnesses to be called against the parolee, and any other documentary material to be used at the revocation hearing. Petitioner denied that he received any of these essentials. The traverse also contained the names of witnesses which petitioner would have provided at the probable cause hearing so the witnesses could be subpoenaed to the revocation hearing. Petitioner stated the belief that had witness Yolanda Fernandez, the victim's girlfriend, been subpoenaed to the hearing, she could have refuted the testimony of a police officer as to the content and authenticity of a letter which the officer stated was written in English, in "wavy handwriting," by a female, and which mentioned nothing about payment for the car petitioner was alleged to have stolen. The letter, exhibit D attached to the traverse, is in block handwriting, is in Spanish, and mentions an amount and date of payment.

In its return, the Board made the conclusory statement that witnesses were notified, but neither stated facts nor appended documentary evidence to show how and when the Board learned the names, addresses, phone numbers or other information regarding petitioner's witnesses, how it notified them, and when and how it attempted to compel attendance.

At an honor release hearing on November 22, 2005, on charges related to the auto theft, one of the bases for the violation of probation, the trial court ordered defendant released on his own recognizance, and set a December 5 hearing date for the writ petition. The next day, the court set a review hearing for November 28, and remanded defendant to custody on the auto theft charge because, as defense counsel explained on November 28, "the sheriff made it plain they were not going to be releasing Mr. Marquez."

On November 28, the trial court granted the writ and ordered petitioner's immediate release. The court held that the *Valdivia* hearing "was not timely held. . . . [and] that the probable cause hearing held on the twelfth business day did not provide [p]etitioner with due process in that he was not present. It was asserted by [the Board] that petitioner could not be located, but [the Board] did not deny that petitioner was in custody in the same building wherein the hearing was held." The court ordered petitioner discharged from custody and restraint from the parole hold filed against him and from any hearing or order entered by the Board. The trial court added that petitioner "has already . . . . served" time in custody for the "underlying violation here . . . . And now Mr. Marquez has been in custody, I think, for another

month and a half or two months trying to figure out these issues because he's got a one-year sentence hanging over him in the State system for exactly the same conduct which the State wants to impose as a violation of parole." The trial court stated that it was making no finding on the absconding and failure-to-drug-test violation of parole charges and that the parole board was free to refile these charges or place a new parole hold on petitioner. Petitioner was released that afternoon.

The very next day, the CDCR filed a request for an immediate stay, authority to rearrest petitioner, and a petition for writ of supersedeas in this court alleging that the trial court's order was contrary to law because petitioner had not shown prejudice and that the interests of justice and public safety required a stay pending appeal. These requests were denied on December 7, 2005. The People's appeal of the trial court's judgment ensued.

## ISSUE ON APPEAL

The Board asserts that release is not the proper remedy for a late probable cause hearing[8] and that petitioner did not show prejudice.

## REQUIREMENTS FOR HABEAS CORPUS RELIEF

The initial burden for habeas corpus relief is on petitioner, who must plead adequate grounds for relief by petition, which should state fully and with particularity the facts on which relief is sought and include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of transcripts and affidavits or declarations. Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing. (*People v. Duvall* (1995) 9 Cal.4th 464, 474 [37 Cal.Rptr.2d 259, 886 P.2d 1252] (*Duvall*).)

A court receiving such a petition evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief. If the court finds that a prima facie case for relief is stated, the court may issue an order to show cause (OSC) or may ask for informal opposition. (*People v. Romero* (1994) 8 Cal.4th 728, 737 [35 Cal.Rptr.2d 270, 883 P.2d 388].) The OSC is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition. It directs the Board to address only those issues. (*Duvall, supra*, 9 Cal.4th at pp. 474–475.)

---

[8] The People's request for judicial notice of an order filed on December 8, 2004, in *Valdivia v. Schwarzenegger*, Civ. S-94-671 LKK/GGH, denying immediate release of Anthony Jackson, a member of the *Valdivia* class, is denied.

Issuance of the OSC contemplates that the custodian of the confined person shall file a responsive pleading, called a return, justifying the confinement. In addition to the facts required by Penal Code section 1480,[9] the return must " 'allege *facts* tending to establish the legality of petitioner's detention' " and, " 'where appropriate, . . . provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed.' " (*Duvall, supra,* 9 Cal.4th at p. 476.) By failing to allege facts demonstrating the lawfulness of the challenged detention, a return containing only general denials, that is, a conclusory statement of ultimate facts, is deficient, and the Board has indicated a willingness to rely on the record. If there are no disputed factual questions as to matters outside the trial record, the merits of petitioner's claim can be reached without ordering an evidentiary hearing. (*Id.* at p. 479.)

In response to the return, the petitioner may file a traverse which may contain further allegations in support of his demand for relief or stipulate that the petition is deemed the traverse. The traverse must, however, reassert factual allegations denying the truth of the Board's allegations or the allegations of the return are deemed admitted and relief will be denied although the traverse may allege additional facts in support of the claim on which an OSC was issued. (*Duvall, supra,* 9 Cal.4th at p. 477.) After considering the return and traverse, if the court finds material facts in dispute, it may order an evidentiary hearing to be held. Where there are no disputed factual questions as to matters outside the trial record, the merits of a habeas corpus petition can be decided without an evidentiary hearing. (*Id.* at p. 478.)

## THE MERITS

As a threshold matter, during oral argument in this court, the Board asserted that petitioner should have brought his complaint to the *Valdivia* court because it retained jurisdiction to enforce the agreement. The Board did not raise this issue in its opening brief and petitioner properly responded that

---

[9] Penal Code section 1480 states: "The person upon whom the writ is served must state in his return, plainly and unequivocally: [¶] 1. Whether he has or has not the party in his custody, or under his power or restraint; [¶] 2. If he has the party in his custody or power, or under his restraint, he must state the authority and cause of such imprisonment or restraint; [¶] 3. If the party is detained by virtue of any writ, warrant, or other written authority, a copy thereof must be annexed to the return, and the original produced and exhibited to the Court or Judge on the hearing of such return; [¶] 4. If the person upon whom the writ is served had the party in his power or custody, or under his restraint, at any time prior or subsequent to the date of the writ of habeas corpus, but has transferred such custody or restraint to another, the return must state particularly to whom, at what time and place, and for what cause, and by what authority such transfer took place; [¶] 5. The return must be signed by the person making the same, and, except when such person is a sworn public officer, and makes such return in his official capacity, it must be verified by his oath."

an appellant may not raise a new point on appeal in its reply brief (or later). (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 616, p. 647.) ▇ At any rate, when a state prisoner challenges the legality of his custody and the relief he seeks is a determination of his entitlement to immediate release, his sole federal remedy is a petition for a writ of habeas corpus. (*Preiser v. Rodriguez* (1973) 411 U.S. 475, 500 [36 L.Ed.2d 439, 93 S.Ct. 1827].) Before a state prisoner may file a federal petition for a writ of habeas corpus, the petitioner must exhaust state court remedies by presenting all federal claims to the highest state court. (*Duncan v. Henry* (1995) 513 U.S. 364, 365–366 [130 L.Ed.2d 865, 115 S.Ct. 887].) Petitioner properly brought his complaint to the state court.

▇ " 'The petitioner in a habeas corpus proceeding bears the ultimate burden of proving the factual allegations that serve as the basis for his or her request for habeas corpus relief. [Citation.]' [Citation.] In conducting our review of a trial court's order granting or denying habeas relief, '[w]e presume that the trial court accepted as true petitioners' undisputed factual allegations, including any undisputed matters contained in the exhibits incorporated by reference into his pleadings.' " (*In re Capistran* (2003) 107 Cal.App.4th 1299, 1304 [132 Cal.Rptr.2d 872].) If a petitioner can show, as in this case, that delay was unreasonable and prejudiced him, he is entitled to habeas corpus relief, that is, release and dismissal of the parole violation allegations. (*Hopper v. United States Parole Com'n* (9th Cir. 1983) 702 F.2d 842, 845 (*Hopper*).)

Petitioner's claim for relief was based on the Board's denial of due process in failing to grant him a timely, or, indeed, any probable cause hearing. The Board admitted not only that the purported probable cause hearing held two days late *was* late in violation of the *Valdivia* remedial plan (see fn. 1, *ante*), but the Board admitted that, although available, petitioner was not even present at that purported probable cause hearing. Both of these facts were contained in the hearing records and were undisputed.

In addition, petitioner claimed that counsel was never appointed for him nor did he ever meet appointed counsel. The record of the purported probable cause hearing the Board produced showed that petitioner was represented by Attorney Holden Green. However, there are no records showing that counsel was appointed for petitioner "[o]n or before the 6th business day" (*Valdivia, supra,* Civ. S-94-0671 LKK/GGH) or that counsel met with petitioner before the purported probable cause hearing. The Board did not attach records showing that petitioner ever received a jail visit from an attorney during the period from his arrest through his violation hearing and there were no affidavits from any of the named attorneys stating when they were appointed, that they had timely met and counseled petitioner, that they had received

names of witnesses from petitioner, and what they had done, if anything, to interview and secure attendance of petitioner's witnesses.

Furthermore, the Board did not refute petitioner's claims that he did not meet Attorney Martin, who postponed the revocation hearing scheduled for August 19, 2005, and that he did not ask for or consent to a postponement. Production of the written waiver of time the Board stated petitioner signed requesting a continuance of the first scheduled revocation hearing could have impeached at least one of petitioner's claims.

The Board responded to petitioner's claim of ineffective assistance of counsel at both the purported probable cause and revocation hearings with the accusation that this allegation was conclusory and entitled petitioner to no relief. The Board's denial that petitioner received ineffective assistance of counsel did not indicate the factual basis upon which the Board reached that conclusion and thus could fairly be characterized as a general denial as it did not assist this court in identifying material factual issues actually in dispute. (*Duvall, supra,* 9 Cal.4th at p. 484.)

Finally, the Board asserted that petitioner failed to show prejudice.[10] It has been held that "a parolee whose parole has been revoked after a properly conducted revocation hearing is not entitled to have the revocation set aside unless it appears that the failure to accord him a prerevocation hearing resulted in prejudice to him at the revocation hearing." (*In re La Croix* (1974) 12 Cal.3d 146, 154 [115 Cal.Rptr. 344, 524 P.2d 816].)

"[M]inimum requirements of due process" [for parole revocation where a parolee has been physically deprived of his conditional liberty pursuant to a claimed parole violation (*In re La Croix, supra,* 12 Cal.3d at p. 152, fn. 2) "include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written

---

[10] At oral argument, petitioner's counsel responded to the latter complaint by asserting that the *Valdivia* plan removed the requirement of a showing of prejudice because it did not specifically mention it. We disagree. *Valdivia* was concerned with the mechanics of assuring parolees due process when violations of parole were alleged. It set out time requirements for giving notice to the parolee, appointing counsel, setting hearings, etc. It did not attempt to change the requirements of substantive due process. As stated in *Hopper, supra,* 702 F.2d at page 845, "to make out a constitutional claim, [petitioner] must show that the delay in the parole revocation hearing was both unreasonable and prejudiced his rights."

statement by the factfinders as to the evidence relied on and reasons for revoking parole." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 489 [33 L.Ed.2d 484, 92 S.Ct. 2593] (*Morrissey*).)

Petitioner has shown prejudice. Specifically, petitioner was prejudiced as found by the trial court, which finding was supported by substantial evidence in the record. (1) Petitioner was denied a timely probable cause hearing and, indeed, any probable cause hearing at all. When the probable cause hearing was supposedly held, petitioner was not present, although available. Furthermore, (2) the lawyer who supposedly represented petitioner at the probable cause hearing held in his absence had never met him, had not advised him, had not communicated any offer to him or received any information from him to present in mitigation or as a partial or complete defense to the charges or the proposed disposition at the probable cause hearing. Thus, appointed counsel was unable to perform the functions of counsel at the probable cause hearing. (3) The record supports petitioner's complaint that he did not receive notice of the charges and evidence against him. The Board's bare assertion that petitioner received documents containing this information, without producing copies of the documents, or affidavits from the attorney whose duty it was to give him that information, did not disprove his claim.

(4) The trial court stated that the revocation hearing the Board claimed to have held was also not timely. As to that hearing, it was unrefuted that petitioner was not represented at the revocation hearing by knowledgeable counsel, and (5) there was no documentation showing that his requested witnesses were notified of or subpoenaed to the hearing. In his traverse, petitioner made an offer of proof of the testimony of prospective witness Yolanda Fernandez, which was material and, if believed, could have impeached testimony regarding petitioner's intent in regard to the charged vehicle theft.

█ "When the return effectively acknowledges or 'admits' allegations in the petition and traverse which, if true, justify the relief sought, such relief may be granted without a hearing on the other factual issues joined by the pleadings." (*In re Saunders* (1970) 2 Cal.3d 1033, 1048 [88 Cal.Rptr. 633, 472 P.2d 921].) █ When a due process violation is alleged, the proper remedy is to provide the process due. (*In re Carr* (1995) 38 Cal.App.4th 209, 218 [45 Cal.Rptr.2d 34].)

█ Here, the process due petitioner under the terms of *Valdivia* was a revocation hearing with due process protections within 35 days of the parole hold. As we have stated, the due process protections which petitioner was deprived of were timely hearings, disclosure of evidence against petitioner, opportunity to be heard in person and to present witnesses and documentary

evidence, and the right to confront and cross-examine adverse witnesses. (See *Morrissey, supra,* 408 U.S. at p. 489.) Thus, petitioner received neither a revocation hearing with due process protections within 35 days, or a revocation hearing with due process protections within a reasonable time beyond the 35 days. The trial court was correct in granting the writ and discharging petitioner.

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and Elia, J., concurred.

A petition for a rehearing was denied August 9, 2007, and the opinion was modified to read as printed above.