Filed 10/28/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALLEN DIMEN DELEON,<br><br>        Defendant and Appellant. | A140050<br><br>(Solano County<br>Super. Ct. No. FCR302185) |

Allen DeLeon appeals following the revocation of his parole. He contends his revocation must be reversed and vacated due to the superior court's failure to timely conduct a preliminary probable cause hearing. We conclude that under the parole revocation scheme embodied in Penal Code[1] sections 1203.2 and 3000.08 as amended by the 2011 Realignment Act, superior courts are not required to conduct preliminary probable cause hearings as specified in *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*) before revoking parole, and that a timely single hearing procedure can suffice. In light of the judicial probable cause determination made within 14 days of DeLeon's arrest, his appearance before the court on the 20th day of his detention and the other procedural protections afforded to DeLeon in this case and under the Realignment Act, the hearing conducted within 45 days of his arrest afforded him constitutionally adequate process. Moreover, because he suffered no prejudice, any delay in promptly bringing him before a judge was harmless. Thus, we affirm.

---

[1] Further statutory references are to the Penal Code.

1

I.

In 2013, DeLeon was on parole following a 2003 conviction for a lewd act committed on a minor. He was released to parole on July 25, 2010. Among the conditions of parole were prohibitions against DeLeon possessing any pornographic material, material that depicted adults or children in undergarments, or devices for viewing sexually explicit programming.

On August 23, 2013, DeLeon's parole agent conducted a sex offender compliance check at DeLeon's motel room. His parole agent found DeLeon in possession of a mobile phone that contained a video of an adult male exposing his penis and masturbating, and pictures of women with their breasts and vaginas exposed and engaged in sexual acts. He was charged with a violation of parole and booked into county jail.

The Department of Corrections and Rehabilitation determined there was probable cause for the charges and DeLeon was given written notice of the parole violations on August 26, 2013. The petition to revoke was referred to the superior court on August 30, and a petition to revoke parole was filed in the superior court on September 4, 2013. A judicial officer reviewed the rules violation report, concluded there was probable cause to support revocation and revoked DeLeon's parole supervision on September 6, 2013. A revocation hearing was scheduled for September 11.

When DeLeon appeared with appointed counsel at the September 11 hearing,[2] he moved to dismiss charges on the grounds that he did not get a probable cause hearing within 15 days of his arrest as specified in Penal Code section 3044. The court set a further hearing and a briefing schedule. When the motion to dismiss was heard on September 25, the court determined that, in light of the Department of Corrections' statutory authority to subject a parolee to flash incarceration for up to 10 days, the petition to revoke referred to the court on August 30 and filed on September 4 was not unreasonably delayed. Nor was there an unreasonable delay in finding probable cause

---

[2] The record does not show precisely when counsel was appointed, but DeLeon's lawyer stated he generally receives the files in these cases two days before the initial hearing.

2

because a judicial officer reviewed the charges and passed upon probable cause on September 6, the fourteenth day after DeLeon's detention. The motion was denied.

The revocation charges proceeded to a hearing on the merits on October 3rd, 41 days after DeLeon was taken into custody. A parole agent testified that he went to DeLeon's room and found two cell phones. The agent confirmed with DeLeon that the phones were his, and on one of the phones the agent discovered a considerable amount of sexually explicit material that he described or provided to the court.

The court concluded that DeLeon violated his parole by possessing pornography and material that depicted children in their undergarments. He was sentenced to 180 days in custody with credit for 84 days before reinstatement to parole. His appeal of the order was timely.

II.

In *Morrissey*, the Supreme Court held that due process requires that revocation of parole by an administrative agency afford a parolee an informal preliminary hearing to determine whether there is reasonable cause to believe he or she has violated parole; and an opportunity for a more formal hearing with written notice of the charges, disclosure of the evidence to be used against the parolee, an opportunity for the parolee to be heard and present evidence, the right to confront and cross-examine witnesses, a neutral and detached hearing body, and a written statement of the reasons for revoking parole. (*Morrissey, supra,* 408 U.S. at pp. 485–490.)

Historically in California the power to grant and revoke parole was vested in the executive branch in the Department of Corrections and Rehabilitation, not the courts. (*In re Prather* (2010) 50 Cal.4th 238, 254.) In 1994 a class of California parolees challenged this system of parole on the grounds that parole revocation processes did not comport with the due process requirements prescribed for such proceedings by the Supreme Court of the United States in *Gagnon v. Scarpelli* (1973) 411 U.S. 778 and *Morrissey*. That litigation resulted in comprehensive changes to the parole revocation process as administered by the department. (*Valdivia v. Brown* (2013) 956 F.Supp.2d 1125, 1127–1129.)

3

However, "[t]his system began to change on April 4, 2011, when the Governor signed Assembly Bill 109, entitled 'The 2011 Realignment Legislation Addressing Public Safety.' " (*Valdivia v. Brown, supra,* 956 F.Supp.2d at p. 1130.) Among other changes to the parole system, AB 109 called for the state courts, not the Department of Corrections and Rehabilitation, to perform various functions related to parole. (*Ibid.*) Subsequent legislation narrowed the role of the state courts to conducting parole revocation proceedings. (*Ibid.*)

That system is codified in sections 1203.2 and 3000.08. The statutes vest parole authorities with the option to impose an intermediate sanction of flash incarceration of up to 10 days upon a parole violator. But if an intermediate sanction is not appropriate, parole authorities must petition the superior court to revoke parole. (section 3000.08.) Upon arrest of the parolee or issuance of a warrant in such cases, "the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision." (§ 1203.2, subd. (a); see § 3000.08, subd. (f).) Cal. Rules of Court, Rule 4.541 sets forth the information to be reported to the court by the supervising agency seeking revocation. The Legislature intended "to provide for a uniform supervision revocation process for petitions to revoke probation, mandatory supervision, postrelease community supervision, and parole," that complies with the due process protections prescribed in *Morrissey* and *People v. Vickers* (1972) 8 Cal.3d 451 (*Vickers*). (Stats. 2012, ch. 43, § 2.) Implicitly, this requires the court to hold an evidentiary hearing to revoke parole.

In *Vickers* our Supreme Court applied the due process requirements articulated in *Morrissey* to revocation of probation. Those procedures included *Morrissey*'s preliminary probable cause hearing requirement and the more formal procedural guarantees it identified in connection with the revocation hearing. (*Vickers, supra,* 8 Cal.3d at pp. 458–459, 461–462.) Three years later, the court clarified that since "probation revocation, unlike parole revocation, is in California a judicial proceeding

4

with concomitant procedural benefits for a probationer at all stages of the revocation process. . . . [S]o long as 'equivalent due process safeguards' assure that a probationer is not arbitrarily deprived of his conditional liberty for any significant period of time [citation], a unitary hearing will usually suffice in probation revocation cases to serve the purposes of the separate preliminary and formal revocation hearings outlined in *Morrissey.*" (*People v. Coleman* (1975) 13 Cal.3d 867, 894–895 (*Coleman*).)

DeLeon argues that the failure of the superior court to hold a timely preliminary probable cause hearing on revocation of his parole denied him due process and required dismissal of the petition for revocation. He bases his argument primarily on *Morrissey* and *In re Marquez* (2007) 153 Cal.App.4th 1, where the court of appeal held that the Department of Corrections and Rehabilitation's failure to provide a parolee "a revocation hearing with due process protections within 35 days, or a revocation hearing with due process protections within a reasonable time beyond the 35 days," warranted the parolee's release. (*In re Marquez* at p. 16.) But since realignment, parole revocation is no longer an administrative proceeding conducted by an agency in the executive branch of government. Rather, it is a judicial proceeding before the superior court, and as recognized in *Coleman*, cases such as *Morrissey* stating the due process requirements for revocation of parole by executive branch agencies do not clearly mandate the process that must be employed by the courts. (§ 3000.08; *Coleman, supra,* 13 Cal.3d at p. 894.)

"[W]ell-settled authority establishes that every parolee retains basic constitutional protection against *arbitrary and oppressive official action.*" (*In re Taylor* (2015) 60 Cal.4th 1019, 1038.) In order to determine the measure of process required to prevent such action against a parolee facing revocation, we apply the three-factor test articulated by the Supreme Court in *Mathews v. Eldridge* (1976) 424 U.S. 319 (*Mathews*). (*Williams v. Superior Court* (2014) 230 Cal.App.4th 636 (*Williams*).)[3] The first factor requires that

---

[3] Analysis under the due process clauses of the California Constitution is similar, and in this case would not lead us to a different result. (See *People v. Ramirez* (1979) 25 Cal.3d 260, 269.)

we identify the private interest that will be affected by the official action. (*Id*. at p. 659, citing *Mathews, supra,* 424 U.S. at p. 335.)

The private interest at stake here is a parolee's interest in conditional liberty. While they enjoy most of the basic rights of citizens to come and go when and as they wish, there are significant restrictions on parolees' liberty. (*In re Taylor, supra,* 60 Cal.4th at p. 1039.) It is a "conditional liberty properly dependent on observance of special parole restrictions." (*Morrissey, supra,* 408 U.S. at p. 480.) Our supreme court has observed that " '[t]he interest in parole supervision to ensure public safety, which justifies administrative parole revocation proceedings in lieu of criminal trial with the attendant protections accorded defendants by the Bill of Rights, also permits restrictions on parolees' liberty and privacy interests.' [Citation.] 'Parole is the conditional release of a prisoner who has already served part of his or her state prison sentence. Once released from confinement, a prisoner on parole is not free from legal restraint, but is constructively a prisoner in the legal custody of state prison authorities until officially discharged from parole.' [Citations.] 'Clearly, the liberty of a parolee is "partial and restricted," [citations] [and] not the equivalent of that of an average citizen [citation].' [Citation.]" (*In re Taylor, supra.* 60 Cal.4th at p. 1037.)

The liberty interest of parolees is also lesser than that of offenders placed on probation. "A convicted defendant released on probation, as distinguished from a parolee, has satisfied the sentencing court that notwithstanding his offense imprisonment in the state prison is not necessary to protect the public. The probationer may serve a jail term as a condition of probation (§ 1203.1), but his probation is not a period of reintegration into society during which the same degree of surveillance and supervision as that deemed necessary for prison inmates is required. A parolee cannot claim an equivalent status. The imprisonment preceding his parole has come about just because he poses a significantly greater risk to society." (*People v. Burgener* (1986) 41 Cal.3d 505, 532–533, disapproved on another ground in *People v. Reyes* (1998) 19 Cal.4th 743, 753.)

Thus, the private interest at stake here is a parolee's right to be free from the arbitrary or capricious deprivation of his or her conditional liberty.

6

Next, we consider the risk of an erroneous deprivation of this conditional liberty under the procedures employed, and the likely value of additional or substitute procedural safeguards. (*Williams, supra,* 230 Cal.App.4th at p. 659, citing *Mathews, supra,* 424 U.S. at p. 335.) DeLeon received written notice of the charges against him. A supervising parole agent and a judge promptly determined that the charges were supported by probable cause. DeLeon was appointed counsel, and counsel was furnished with the documentation supporting the charges. The charges were substantiated at an evidentiary hearing. Additional procedures were not constitutionally required to prevent an erroneous deprivation of DeLeon's conditional liberty.

DeLeon argues that due process requires a probable cause hearing of the revocation charge within 10 or 15 days of arrest. The prompt probable cause review of the charges and the parole violation report by a judicial officer as specified in section 1203.2, subdivisions (a) and (b)(2) guards against the risk of an erroneous deprivation of liberty pending a full hearing in parole revocation cases. Frequently, as in this case, the parole violation report contains a straightforward, albeit summary, description of the facts supporting the violation. When revocation proceedings were conducted by administrative agencies in the executive branch, as made clear in *Morrissey*, such documentary evidence was often sufficient to sustain a charged violation. (See *Morrissey, supra,* 408 U.S. at p. 489 [parole revocation "is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"]; see also *In re Miller* (2006) 145 Cal.App.4th 1228, 1234–1235 [parole violations need only be proven by a preponderance of the evidence].)

Traditionally, a probable cause determination in a criminal case is decided by a magistrate in a non-adversary proceeding upon hearsay and written testimony. (*Gerstein v. Pugh* (1975) 420 U.S. 103, 120 (*Gerstein*).) The purpose of such proceedings is not to resolve conflicting evidence or make credibility determinations. Rather the court determines whether the evidence supports "a reasonable belief in guilt." (*Id*. at p. 121.) Judicial review of the charges supporting revocation of parole achieves this same

purpose, and resulted in a finding in DeLeon's case of "probable cause to support a revocation and preliminarily revoke[] supervision."

The court in *Gerstein* distinguished the probable cause determination in a criminal case from the informal preliminary hearing to be given a parolee under *Morrissey* or a probationer under *Gagnon v. Scarpelli, supra*, 411 U.S. 778, on the ground that in parole and probation cases evidence must be preserved for a "final revocation hearing [that] frequently is held at some distance from the place the violation occurred." (*Gerstein, supra*, 420 U.S. at pp. 121, fn. 22.) The basis for the distinction drawn by the court no longer applies to revocation of parole in our state. Revocation proceedings are now conducted by the California courts, not by administrative agencies, as they were in *Morrissey* and *Gagnon*, and hearings no longer occur at locations remote from the place of arrest, such as at a state prison.

Moreover, although there is no absolute right to counsel in parole revocation proceedings (*In re Michael I.* (1998) 63 Cal.App.4th 462, 468), a right to counsel is afforded under the Realignment Act, and if a parolee facing revocation is indigent, a lawyer is to be appointed by the court. (§§ 1203.2, subd. (b)(2), 3000.08, subd. (f).) The appointment and assistance of counsel serves to guard against wrongful detention, and revocation of parole, on a meritless charge.

DeLeon says that a properly conducted probable cause hearing would afford the parolee a chance to meet with his attorney, give his attorney the names and addresses of the witnesses to subpoena for a revocation hearing, receive police reports, parole violation reports and a description of the exact charges. However, as we have said, DeLeon received notice of the charges, his counsel received the applicable reports, and nothing in the record suggests that Solano County's procedures prevent parolees' counsel from effectively representing their clients in revocation proceedings.

The procedures employed here, including prompt documentary review of the charges and supporting material by a judicial officer to determine whether probable cause existed, were sufficient to prevent an arbitrary deprivation of liberty pending a full

8

revocation hearing on the merits, and eliminate any significant risk of an erroneous determination.

The final *Mathews* factor considers the government's interest, including the function involved and the fiscal or administrative burdens that additional procedures may impose. (*Williams, supra*, 230 Cal.App.4th at p. 660, citing *Mathews, supra*, 424 U.S. at p. 335.) Here, the government has an interest in the orderly and expeditious functioning of the courts, that includes conducting timely probation and parole revocation proceedings.

In 2014, the Judicial Council of California reported a need for an additional 300 judicial officers to adequately address the work in our superior courts. (Judicial Council of California, Court Statistics Report (2014) at p. 55; <http://www.courts.ca.gov/documents/2014-Court-Statistics-Report.pdf> [as of Oct. 28, 2015].) The report does not appear to reflect the additional workload demands placed upon the courts by the 2011 realignment legislation. Shortly before these responsibilities were transferred to the courts, the Department of Corrections and Rehabilitation reported that in 2010 more than 60 thousand parolees were returned to custody for violating parole. (California Department of Corrections and Rehabilitation, California Prisoners and Parolees 2010 (2011) at pp. 56-57; <http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch /Annual/CalPris/CALPRISd2010.pdf> [as of Oct. 28, 2015].) Under realignment, while parolees benefit significantly from having courts decide whether their parole should be revoked, the state faces additional administrative and fiscal challenges by increasing the role of the courts in these proceedings and requiring greater coordination between the executive and judicial branches.

We should be cautious before adding to these already substantial requirements by imposing further procedures not plainly mandated under the constitution. The current demands upon public resources suggest that a system for parole revocation be as expeditious as possible consistent with ensuring parolees facing revocation are not subjected to arbitrary or oppressive government action.

The important considerations in such cases require that parolees receive a timely determination of probable cause by a judicial officer followed by a full revocation hearing within a reasonable time. The probable cause hearings espoused by DeLeon that are to occur within 10 to 15 days of a parolee's arrest would further burden our overworked and under-resourced superior courts while adding little to the fair determination of revocation proceedings.

Here, DeLeon was promptly served with notice of the charges and the circumstances supporting them and his case was reviewed by a parole supervisor for probable cause. He was appointed counsel and his counsel was provided the documentation supporting the charges. The court made a probable cause determination within 15 days of his arrest, just two days after charges were filed with the court, and he was given what would have been a final revocation hearing within 20 days of his arrest but for his motion to dismiss. A full evidentiary hearing was held within 45 days of his arrest. *Morrissey* does not govern the measure of process due a parolee facing revocation before a court, but the revocation hearing must take place within a reasonable time of the parolee's arrest, and *Morrissey's* observation that a delay of up to two months "would not appear to be unreasonable" is instructive. (*Morrissey, supra*, 408 U.S. at p. 488.) While we recognize the importance of a prompt review when the state acts to deprive a parolee of his or her conditional liberty, the proceedings here were not unduly protracted and satisfied due process.

DeLeon's argument that a probable cause hearing within 15 days of his arrest was required by section 3044 is unpersuasive. Section 3044 is directed to the "Board of Parole Hearings or its successor in interest," and provides the procedural protections the agency must afford parolees facing revocation, "including a probable cause hearing no later than 15 days following his or her arrest for violation of parole." (§ 3044, subd. (a)(1).) But the superior court is not a successor in interest to the Board of Parole Hearings, an agency in the executive branch of government. Section 3044 does not apply to parole revocation proceedings conducted by the superior court.

Section 3044 was enacted by the voters as part of Proposition 9 in the general presidential election of 2008. Commonly known as "The Victims' Bill of Rights Act of 2008: Marsy's Law," Proposition 9 was designed and intended to provide victims of crime with "rights to justice and due process," and eliminate parole hearings in which there is no likelihood of an offender's release. At the time section 3044 was enacted, the timing of parole revocation proceedings was governed by the stipulated order for injunctive relief in *Valdivia v. Brown, supra*, 956 F.Supp.2d 1125. Paragraph 11.d. of the injunction required notice of charges to be given to parolees within three days of a parole hold and probable cause hearings to be held no later than 10 days after parolees were served notice of charges. (*Id.* at p. 1128.) Thus, section 3044 operated to extend the time limit for probable cause hearings, not limit or shorten it. In this respect, nothing we do today frustrates the intent or purpose of the voters in enacting the Victims' Bill of Rights Act, which was not to benefit parolees.

Unlike the Fourth District in *Williams, supra*, 230 Cal.App.4th 636, we decline to require two parole revocation hearings, or set strict time limits in parole revocation proceedings. The *Williams* court does not appear to have considered the reduced risk of an erroneous deprivation when the charges are promptly reviewed by a judicial officer as specified in section 1203.2 subdivisions (a) and (b)(2). The constitution does not mandate "an inflexible structure for parole revocation procedures." (*Morrissey, supra*, 408 U.S. at p. 480.) Due process requires that revocation proceedings include reasonable safeguards against mistakes and proceed with reasonable diligence. Those requirements were met in this case.

## III.

"[A] parolee whose parole has been revoked after a properly conducted revocation hearing is not entitled to have the revocation set aside unless it appears that the failure to accord him a prerevocation hearing resulted in prejudice to him at the revocation hearing." (*In re La Croix* (1974) 12 Cal.3d 146, 154.) Here, as set forth above, DeLeon was afforded a timely revocation hearing with all the procedural protections afforded by

11

*Morrissey* for such a hearing plus the appointment of counsel. Thus, even if DeLeon was unconstitutionally denied a preliminary probable cause hearing, he suffered no prejudice.

Although his brief in this court argues prejudice, he makes no factual showing to support the claim. DeLeon does not suggest a possible meritorious line of defense that was foreclosed by the delay of any probable cause hearing, or facts that could have been raised at that hearing that would have required the charges to be dismissed. Instead, he suggests only that more objections to the prosecution's evidence might have been sustained had he been provided evidence and reports earlier than September 11 for the hearing convened on October 3.

We are not surprised that DeLeon cannot make a showing of prejudice. DeLeon's parole agent found a cell phone containing obscene images in DeLeon's motel room. DeLeon admitted the phone was his. Any violation of due process occasioned by the failure to hold a timely probable cause hearing in this case was harmless beyond a reasonable doubt. (*In re La Croix, supra*, 12 Cal.3d at p. 155.)

DISPOSITION

The review of the reports and charges warranting revocation of parole by a parole supervisor, delivery of written notice of the charges to the parolee, prompt judicial review of the charges and supporting documentation by the superior court, reasonably prompt appointment of counsel and a hearing on the merits of the charges all lead us to conclude that there were adequate safeguards in place here to prevent the arbitrary deprivation of

DeLeon's liberty for an undue period of time and to ensure his timely access to the courts. The order finding DeLeon in violation of parole and sentencing him to 180 days in custody is affirmed.

_____
Siggins, J.

We concur:

_____
Pollak, Acting P.J.


_____
Jenkins, J.

13

Trial Court:                                    Solano County Superior Court


Trial Judge:                                    Honorable Robert S. Bowers


Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald R. Engler, Senior Assistant Attorney General, Allen R. Crown, Allan Yannow, Deputy Attorneys General for Plaintiff and Respondent.