[Crim. No. 14246.   Second Dist., Div. Two.   Oct. 21, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CURTIS
TELMA STEPHENS, Defendant and Appellant.

Cary G. Branch for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment entered following a nonjury trial that resulted in his conviction of the crimes of possessing marijuana and heroin in violation of Health and Safety Code sections 11530 and 11500. Appellant has stated his contentions as follows:

■ "[1] The trial court was without jurisdiction and appellant was denied his constitutional rights and due process of law because appellant was not indicted by a grand jury but prosecuted by information. [2] Before the filing of the information the appellant was not legally committed by a magistrate as required by P. C. § 995. [3] The evidence intro-

duced at the trial was illegally obtained in violation of appellant's constitutional rights as guaranteed by Art. I, Sec. 13, of the California Constitution and the 4th and 14th Amendments of the Federal Constitution. [4] The evidence was illegally obtained because the officers entered the premises in violation of P. C. § 844. [5] Appellant was denied due process of law and a fair and speedy trial by the prosecution's delay between appellant's arrest and the filing of the charges, and failure to take appellant before a magistrate without unnecessary delay.'' We have concluded that none of these contentions is meritorious.

Appellant's initial contention was rejected by the United States Supreme Court in 1884 [*Hurtado* v. *California,* 110 U.S. 516 (28 L.Ed. 232, 4 S.Ct. 111, 292)], and we find nothing in the more recent decisions of that court, or any court, that tends to cast doubt upon the validity of that determination. Appellant's other contentions require a brief recitation of the evidence. Viewed in support of the judgment, as required by the usual rule governing appellate review, the evidence is as follows:

During the evening hours of August 23, 1966, Sergeant Bachman of the Los Angeles Police Department received a telephone call from a person who identified himself as the brother of Yvonne Thomas. The officer recognized this person as the same informant who earlier that year had given him accurate information concerning appellant and Miss Thomas that had led to their arrest while in possession of five pounds of marijuana and a loaded pistol. On the night of the 23d, this person advised that appellant and his sister were together again, that appellant once more was dealing in narcotics, and that he had started Miss Thomas using again.

This caller further told Officer Bachman that he himself had seen heroin and marijuana in the apartment occupied exclusively by appellant and his sister at the address he had given the officer although he did not know exactly where therein their supply was kept. When asked, he also advised the officer that appellant once again was in possession of a gun. The informant was most anxious about his sister's welfare and urged the officers: ''Please get down there as soon as you can.''

Officer Bachman relayed this information as soon as he had received it to Sergeant Cooper who was assigned to the ''Day Watch'' in that area. Officer Cooper checked with the Sheriff's Fugitive Detail the following morning and learned that

Miss Thomas was wanted on a warrant[1] issued by reason of her violation of the probation previously granted her in another matter. At 10:30 the following morning Officer Cooper and two fellow officers went to the designated location. While one officer watched the rear window of the apartment, Officer Cooper and another officer approached the front door. They knocked loudly two or three times and called out "Police officers. We have a warrant for Yvonne's arrest." Thereafter, the officers heard what sounded like "a hurried shuffling of feet" within the apartment but no sound of movement coming in the direction of the door. The officers waited for "probably less than 15 or 20 [seconds]" and then forced entrance.

They discovered appellant dressed in a T-shirt and shorts standing in a hallway between the front room, bathroom and bedroom. Miss Thomas was sitting on the side of the bed. Both parties' arms revealed the indicia of recent narcotic injections and they appeared to be under the influence of narcotics. They were placed under arrest and a search of the premises disclosed substantial quantities of marijuana and heroin and a small arsenal of weapons. After full admonitions concerning his constitutional rights, appellant freely and voluntarily admitted his ownership of the narcotics.

■ The magistrate did not err in holding appellant to answer in the superior court nor was appellant's motion to set aside the information under Penal Code section 995 improperly denied. While the evidence introduced at the preliminary hearing was less detailed than that presented at the time of trial, it was clearly sufficient to justify appellant's

[1]Appellant contends that the recent decisions in *People* v. *Sesslin*, 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321], and *People* v. *Chimel*, 68 Cal.2d 436 [67 Cal.Rptr. 421, 439 P.2d 333], require that a probation officer's report to the court concerning a probationer's conduct in violation of his probation must be made under oath and, further, that a judge is required to execute such a warrant personally rather than by ordering his clerk to issue a bench warrant. We find nothing in these cases, nor in the considerations upon which they were based, that would tend to support such a contention. Penal Code section 1203.2, in pertinent part, expressly provides: "At any time during the probationary period of the person released on probation in accordance with the provisions of these sections, . . . the court may in its discretion issue a warrant for the rearrest of any such person and may thereupon revoke and terminate such probation, if the interests of justice so require, and if the court in its judgment, shall have reason to believe *from the report* of the probation officer, *or otherwise*, that the person so placed upon probation is violating any of the conditions of his probation, or engaging in criminal practices, or has become abandoned to improper associates or a vicious life." (Italics added.)

commitment. As stated in *Badillo* v. *Superior Court*, 46 Cal.2d 269, 271-272 [294 P.2d 23]:

"No problem is presented in applying this rule [excluding illegally obtained evidence] in cases involving searches and seizures in which the facts bearing on the legality of the search or seizure are undisputed and establish as a matter of law that the evidence is or is not admissible. In many cases, however, the evidence before the magistrate bearing on this issue may be in conflict or susceptible of conflicting inferences or consist only of the testimony of prosecution witnesses, and under these circumstances the court in ruling on a motion to set aside the information will frequently not be in a position to make a *final* determination as to the admissibility of the evidence. ■ *Accordingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue.*" (Italics added.)

■ The issues regarding the propriety of the police action were relitigated more extensively at the time of trial and our foregoing summary of the evidence clearly demonstrates the correctness of the court's ruling thereon. Although the police may not have literally "demanded admittance," their statement identifying themselves and announcing that they had a warrant for Miss Thomas' arrest necessarily implied their demand for admittance. When the response was "a hurried shuffling of feet," but none approaching the door for approximately 15 seconds, the officers properly concluded that entry should be forced in order to prevent the destruction of contraband or appellant's arming himself. The information supplied to them by an informant who previously had given them reliable information regarding appellant and Miss Thomas, and whom the officers identified as far as possible, provided an ample basis for their reasonably apprehending such actions on the part of the occupants if their entry was further delayed.

■ Appellant's final contention is based upon the fact that following his initial arrest on August 24, 1966, he was released within 48 hours pursuant to Penal Code section 849, subdivision (b), subsection (1). Thereafter, on October 20, 1966, a complaint was filed against appellant and Miss Thomas charging them with the present offenses. Appellant

thereafter was arrested in early 1967, and, so far as revealed by the record, was arraigned in timely fashion. Despite the phraseology of his fifth contention, appellant does not actually contend to the contrary. Rather, he appears to argue that a complaint should have been filed against him and Miss Thomas immediately following their initial arrest.

Miss Thomas apparently was in custody on the warrant relating to her probation violation until October 21, 1966. Appellant introduced hearsay evidence indicating that she had left the jurisdiction upon her release. In any event she had not been rearrested and appellant contends that failure to prosecute them jointly deprived him of a fair trial because, although he made no defense to the present charges, if Miss Thomas had been present she might have corroborated his testimony challenging that of the officers on the issue of compliance with Penal Code section 844 prior to their forcing entry into his apartment.

Of course, the possibility that Miss Thomas might have given such testimony is based on pure speculation but even if we were to assume that she would have done so, there is absolutely nothing in the present record to bring this case within the scope of *People* v. *Kiihoa,* 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673]. In *Kiihoa,* the prosecution witnesses expressly admitted that they had delayed prosecuting the defendant therein until a material witness on the issue of his guilt or innocence had left the state. Even if a codefendant could ever be rationally compared to the police agent involved in the *Kiihoa* prosecution, there is absolutely nothing in the record affirmatively indicating that the police in any way intended, or even foresaw the possibility, that appellant's codefendant would be released from custody following the filing of the complaint herein and would thereafter leave the jurisdiction.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied November 13, 1968, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1968.