[Crim. No. 25167. Second Dist., Div. One. Jan. 29, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK WILLIAM HAWKINS, Defendant and Appellant.

960

**Counsel**

Seymour M. Philips, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

### HANSON, J.—

#### Introduction

This is an appeal by a defendant in a criminal case from an order revoking probation on the grounds that the trial court abused its discretion, acted arbitrarily and capriciously, and that he was denied "due process" and was subjected to "cruel and unusual punishment."

#### Background

On August 4, 1971, the defendant was charged in a two-count information of selling, furnishing or giving away a restricted dangerous drug (seconal) on or about June 4, 1971, in violation of Health and Safety Code section 11912 (count I), and of unlawfully offering to sell, furnish, transport, administer and give a narcotic to a police officer and supplying a liquid substance in lieu of said narcotic on the same date in violation of section 11503 of the Health and Safety Code (count II).

On August 19, 1971, the defendant, represented by counsel, pleaded not guilty. He was tried and convicted and on November 3, 1971, in lieu of granting a new trial, the court reduced count I from Health and Safety Code section 11912 to Health and Safety Code section 11911, a lesser offense, dismissed count II, and sentenced the defendant to state prison for the term prescribed by law, suspended sentence, and granted probation for three years on the conditions that the defendant (1) spend the first 11 months in the county jail; (2) *not use or possess any dangerous drugs, narcotics or narcotic paraphernalia and stay away from places where addicts congregate* (italics added); (3) seek and maintain employment as approved by the probation officer; (4) maintain residence as approved by the probation officer; and (5) obey all laws, orders, rules and regulations of the probation department and of the court.

#### The Revocation of Probation

Following is a chronology of three court actions which culminated in the revocation of defendant's probation:

*First:* The minute order of January 24, 1974, reflects that defendant was found in violation of probation; probation was summarily revoked; and a bench warrant issued. Apparently this action was taken without the

defendant or his counsel being present. The court action of this date was apparently based on a report from the probation officer; the trial court personally apprised the defendant of this fact and placed it in the record at a later hearing.[1]

*Second:* The minute order of the next day, January 25, 1974, reflects that the court continued the violation of probation hearing to February 1, 1974, on the defendant's motion, quashed the bench warrant and remanded the defendant with no bail. At this court appearance the defendant was represented by Deputy Public Defender Zinman. The record on appeal does not include a reporter's transcript of this proceeding.

*Third:* The minute order of February 1, 1974, shows a hearing was conducted with the defendant present and represented by Mr. Zinman, the same deputy public defender who represented him and requested the continuance at the January 25, 1974, appearance.

---

[1] At the February 1, 1974, hearing the court stated for the record:

"THE COURT: This is the matter of People versus Jack William Hawkins. This matter is before the Court for the purpose of holding a violation of probation hearing.

"It appears from the file that on November 3, 1971, the defendant was sentenced to the state prison for the term prescribed by law. At that time, the execution of sentence was suspended and the defendant was placed on probation for a period of three years under the certain following terms and conditions:

"One of the conditions was that he was to spend eleven months in the county jail. Upon his release, he was not to use or possess any narcotics or narcotic paraphernalia.

"He was to stay away from places where addicts congregate. That was to include dangerous drugs. Not to associate with known narcotic users or sellers or sellers of dangerous drugs. To seek and maintain employment as approved by the probation officer.

"He was to maintain residence as approved by the probation officer.

"He was to obey all laws, orders, rules and regulations of the Court and of the Probation Department.

"The Court, at that time, commented that It wanted to explain something to the defendant; that It had sentenced him to prison which carried a term of two to ten years and he cautioned him that if, at anytime in the next three years he should violate any of the terms of the probation, he would be going to prison.

"Said, 'In other words, if I catch you hobnobbing with someone that just uses narcotics, that's a crime punishable by two to ten years in prison for you. It's not even a crime for anybody else to associate with people like you but for you, it obviously is.'

"The Court at that time indicated that It had reduced the matter from a sale to possession for sale and it was on that type of an offense that he was placed on probation.

"The probation officer has advised that the defendant appears to be in violation of the terms and conditions of his probation. Mentioned that he was arrested by the Torrance Police Department on December 21 of '73 and by Federal agents for violation of 21 U.S. Code Annotated, sale of cocaine, and he was arrested on January 21, '74 by the Torrance Police Department for violation of Health and Safety Code of this State, 11352.

"I'll further indicate that the officers had information that he had been threatening the informant in the Federal case.

"In view of this information, the Court ordered the defendant's probation revoked and the matter was set for hearing."

The reporter's transcript of this proceeding reflects that Officer Ronald R. Brumbelow, assigned to the Narcotics Section of the Torrance Police Department, testified that on December 8, 1973, he went to the defendant's apartment and purchased one grain of cocaine for $50 from the defendant.[2]

Officer Brumbelow further testified that on December 21, 1973, following telephone negotiations with the defendant for the purchase of a large amount of cocaine (between a half pound and a pound, valued at about $10,000 for a half pound), he went to the defendant's apartment with $11,000 furnished by federal agents. The defendant came to the car, counted the money, returned to his apartment and by telephone notified someone the money was there. The defendant then drove the officer to a supermarket parking lot near the intersection of Rolling Hills Road and Pacific Coast Highway and pointed to a Volkswagen Karman Ghia and told the officers the two individuals in the car had the cocaine. Officer Brumbelow went to the car and was handed a paper bag containing a plastic bag in which was approximately one-half pound of a white granular substance, later analyzed to be cocaine. By a prearranged signal federal agents moved in and arrested the defendant and the individuals in the car.[3]

Following cross-examination of Officer Brumbelow by the defendant's counsel, the defendant elected to call no other witnesses or to take the stand in his own behalf.[4]

---

[2]The white granular substance in the paper bindle which Officer Brumbelow purchased was analyzed to be cocaine and the defendant was held to answer following a preliminary hearing (case No. A185831) and the case was pending in the superior court.

[3]The action filed against the defendant in the federal court arising out of this purchase is case No. R133078.

[4]The following conversations took place, in open court, at the February 1, 1974, hearing:
"MR. ZINMAN: I have nothing further.
"MR. IDEMAN: I have nothing further.
    "People rest.
"THE COURT: Anything from the defendant?
"MR. ZINMAN: May I have just one moment?
    "Nothing, your Honor.
"THE COURT: The Court finds the defendant definitely is in violation of the terms and conditions of his probation. Probation will remain revoked.
    " . . . . . . . . . . . . . . . . . . . . . .
"THE COURT: Are you ready for sentence at this time or do you want the matter of sentencing to go over a few days?
"MR. ZINMAN: Could it go till the 13th, your Honor?
"THE COURT: No. I won't put it till the 13th.
"MR. ZINMAN: That's the date of the arraignment in the State Court case.
"THE COURT: I don't care about that. I am going to dispose of this case before then

## ISSUES

On appeal the defendant contends: (1) that the court below abused its discretion by revoking his probation and issuing a bench warrant immediately following his arrest without giving him notice of its intention to revoke his probation and before he was convicted of another felony, thus denying him "due process" of law; and (2) that the revocation of his probation constituted cruel and unusual punishment.

## DISCUSSION

The case at bench turns on whether or not the three actions of the trial court, as described above, either singularly or collectively, ran afoul of minimal procedural "due process" of law requirements.

The United States Supreme Court in *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 489 [33 L.Ed.2d 484, 499, 92 S.Ct. 2593], stated that the minimum requirements of due process at a parole revocation hearing are: ". . . (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional

---

"I will put it over several days but not till the 13th.

"He has actually been sentenced by the Court. It's merely a matter of ordering the sentence into execution but I will put it over a few days, if that's your desire. Otherwise, I will proceed at this time.

"MR. ZINMAN: May I have just a moment, please?

"THE COURT: Yes.

"MR. IDEMAN: Your Honor, is he on a no-bail warrant on this case at this time?

"THE COURT: I am sure he is. Probation was revoked and he was remanded.

"MR. ZINMAN: We are ready to proceed at this time, your Honor.

"THE COURT: All right. In this matter, the defendant was heretofore placed on probation on certain terms and conditions.

"He was originally sentenced to the state prison for the term prescribed by law. The execution of that sentence was suspended under certain terms and conditions.

"The evidence before the Court today shows clearly that he is in violation of the terms and conditions of the probation so at this time, the probation will remain revoked.

"The sentence of the defendant to the state prison for the term prescribed by law is now ordered into full force and effect.

"The defendant is remanded to the custody of the sheriff of this county for delivery to the Director of Corrections at the California Institution for Men at Chino. However, the sheriff is directed to hold the defendant here until such time as any other case pending before the Superior Court is determined or otherwise disposed of.

"THE CLERK: How many days credit is he entitled to?

"THE COURT: He is entitled to one year plus six days."

parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

The California Supreme Court in *People* v. *Vickers,* 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], held that the minimal procedural "due process" requirements in *Morrissey,* a parole violation case, were equally applicable to probation violation cases, but went on to say at page 458: ". . . However, *the precise nature of the proceedings for such revocation need not be identical if they assure equivalent due process safeguards."* (Italics added.)

In *People* v. *Dominguez,* 35 Cal.App.3d 18 [112 Cal.Rptr. 98], we held, acknowledging and citing *Morrissey* and *Vickers,* that a defendant cannot relitigate the conviction of a felony which was the basis for the revocation of probation and that the prosecution of the felony case which was the basis for the revocation satisfied "due process" requirements of the *Morrissey* and *Vickers* cases in a revocation hearing.

In *People* v. *Dale,* 36 Cal.App.3d 191 [112 Cal.Rptr. 93], we reviewed the requirements of *Morrissey* and *Vickers* as they pertain to an absconding probationer who deserted probation and held that in such a case the trial court was empowered to summarily revoke his probation without an initial probable cause hearing, citing *Vickers.*

In the case at bench, we address ourselves to the power of the court, in light of *Morrissey* and *Vickers,* to summarily revoke probation based on a probation officer's report of other felonious acts of the probationer, without convictions, and without the presence of the probationer-defendant.

The California State Legislature, as part of the overall probation rehabilitation scheme, enacted Penal Code section 1203.2, subdivision (a), which provides, in part, that the court ". . . may revoke and terminate such probation, if the interests of justice so require, and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person . . . has subsequently committed other offenses, *regardless whether he has been prosecuted for such offenses."* (Italics added.)

The California Supreme Court in *Vickers, supra,* 8 Cal.3d at page 460, footnote 10, stated: "We do not foreclose the possibility that summary

revocations other than when the defendant has absconded, particularly if necessary to preserve the court's jurisdiction, will comport with due process requirements."

The court in *People* v. *Gifford,* 38 Cal.App.3d 89 [113 Cal.Rptr. 112], in holding that "any necessity for a preliminary inquiry was obviated" and "there was no need for a separate inquiry preliminary to his final hearing" because the defendant was in custody under a burglary conviction and sentence, succinctly stated the purpose for the two-stage hearings at page 91: "The two-stage hearings required under *Morrissey* and *Vickers* are designed to insure that a person who has been granted conditional release from a penal institution shall not be deprived of that liberty without a hearing and that he shall not be detained pending such a hearing for an undue time without at least some preliminary inquiry into the grounds for his reincarceration."

■ In the case at bench we hold the court had the power and duty to summarily revoke the defendant's probation on the information supplied by the probation officer and to issue a bench warrant as the only practical and expeditious way to bring the defendant swiftly before the court, to give him notice of the claimed violations and to afford him a hearing. The efficient administration of criminal justice and the credibility and viability of the probation system demand that the court have the power to so act. To hold otherwise would be to drastically undermine the authority of the probation officer, laboring under burdening case loads, make a mockery of the court and its conditions of probation, and reduce the whole probation scheme to shambles. However, we hold that once the defendant is brought before the court "he shall not be detained" pending "the hearings mandated by *Morrissey* and *Vickers* for an 'undue time.' "

In the case at bench the court initially revoked probation and issued a bench warrant on January 24, 1974. The next day, January 25, 1974, the defendant appeared with counsel and was remanded without bail[5] and the revocation hearing was continued at the probationer's counsel's request to February 1, 1974, at which time the hearing was conducted. We hold that this lapse of time was *not* "undue time" to deny the defendant "due process" of law.

[5]The record on appeal indicates that the defendant at no time moved the court to fix bail. We therefore are not confronted with the issue of remanding a defendant, without bail, pending final revocation of probation hearing. (See *In re Law,* 10 Cal.3d 21 [109 Cal.Rptr. 573, 513 P.2d 621], re a parolee's right to bail following a "parole hold.")

We further hold that the hearing of February 1, 1974, was in substantial compliance with minimal procedural "due process" requirements of *Morrissey* and *Vickers* which "serve as substantial protection against ill-considered revocation[s]. . . ." We note that the United States Supreme Court in *Morrissey, supra,* 408 U.S. at page 490 [33 L.Ed.2d at pages 499-500], stated, "We have no thought to create an inflexible structure for parole procedures," and the California Supreme Court in *Vickers, supra,* 8 Cal.3d at page 458, said: *"However, the precise nature of the proceedings for such revocation* [of probation] *need not be identical if they assure equivalent due process safeguards"* (italics added), and at page 459, footnote 8, stated: "We do not read *Morrissey* as precluding the holding of the two proceedings in close or immediate sequence to each other providing that the due process protections declared in that decision are not infringed." (Also see *People* v. *Ruster,* 40 Cal.App.3d 865, 876 [115 Cal.Rptr. 572].)

Moreover, inasmuch as a prerevocation hearing was not objected to at the final hearing on February 1, 1974, the defendant waived the hearing. (See *In re La Croix,* 12 Cal.3d 146, 154 [115 Cal.Rptr. 344, 524 P.2d 816].)

Accordingly, we hold in the instant case that the interests served by the probable cause hearing (i.e., to determine if there is sufficient evidence of violation to warrant detention of a probationer until a more formal hearing can be had) and the formal hearing itself were met during the proceedings of January 25, 1974, and February 1, 1974. These court actions combine to afford the defendant, without "undue delay," a simultaneous probable cause and final hearing with the defendant and counsel present and comported with the guidelines laid down in *Morrissey* and *Vickers.* ■ Neither the defendant nor his counsel objected that they had inadequate notice of the charges and thus, absent objection, we will not imply inadequate notice from a record which is silent as to exactly how the defendant was given notice of the charges. (See *People* v. *Baker,* 38 Cal.App.3d 625, 629 [113 Cal.Rptr. 244].) ■ The record reflects, as herein recounted in some detail, the probationer was present, heard Officer Brumbelow's testimony; he (the probationer) had an opportunity to be heard and to present witnesses and documentary evidence; he had the right to, and his counsel did cross-examine Officer Brumbelow; the hearing was before a "neutral and detached" judicial officer; and finally, the court reporter's transcript of the February 1, 1974, hearing, in form and substance, met the requirement of "a written statement by the factfinders as to the evidence relied on

and the reasons for revoking the parole." (See *People* v. *Scott,* 34 Cal.App.3d 702 [110 Cal.Rptr. 402].)

█ There is no abuse of discretion in revoking probation if the record shows that the accused violated the terms and conditions of probation. (*People* v. *Nelson,* 257 Cal.App.2d 282, 285-286 [64 Cal.Rptr. 801].) Moreover, it is clear that: ". . . A court is justified in revoking probation even though the circumstances would not warrant a conviction. [Citation.] All that is required is that the grounds for revocation be clearly and satisfactorily shown; they need not be established beyond a reasonable doubt. [Citation.]" (*People* v. *Hayko,* 7 Cal.App.3d 604, 609 [86 Cal.Rptr. 726]; *People* v. *Andre,* 37 Cal.App.3d 516, 520-521 [112 Cal.Rptr. 438].)

In the instant case the unimpeached and incontroverted testimony of Officer Brumbelow, a percipient witness, was that the defendant on two separate occasions, December 8, 1973, and December 21, 1973, was involved in the sale of cocaine, a narcotic, in direct violation of a condition of probation that he "not use or possess any dangerous drugs, narcotics or narcotic paraphernalia and stay away from places where addicts congregate."

Accordingly, we further hold that the evidence clearly and satisfactorily shows the court was justified in revoking probation and did not act in an arbitrary or capricious manner and did not abuse its discretion.

█ The defendant's assertion that he was subjected to "cruel and unusual punishment," unsupported by authority, has not been timely raised on appeal. The revocation of probation is not "punishment." The "punishment" of a state prison sentence was imposed at the original sentencing. On November 3, 1971, the state prison sentence was suspended when the defendant was placed on probation. This assignment of error should have been raised at that time. It is not timely raised following a revocation of probation.

Moreover, in *Cooper* v. *United States* (10th Cir. 1968) 403 F.2d 71, the court said at page 73: "[A] sentence within the maximum prescribed by law will be deemed to be cruel and unusual only when such a conclusion is clearly required. [Citation.] This is in recognition of the fact that the fixing of an adequate penalty is properly a matter of legislative concern. Hence, it is only when it can be unhesitatingly said that the legislature

has abused its discretion that the prescribed penalty will be abrogated by the court. [Citation.]"

We cannot "unhesitatingly" say that the Legislature abused its discretion.

Judgment (order revoking probation) is affirmed.

Wood, P. J., and Lillie, J., concurred.