Filed 5/13/13; pub. order 6/3/13 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHAWN JAMES ALLEN WOODALL,<br><br>    Defendant and Appellant. | D062005<br><br><br><br>(Super. Ct. No. SCD236538) |

APPEAL from a judgment of the Superior Court of San Diego County, Desiree Bruce-Lyle, Judge.  Affirmed.

Law Office of Kurt David Hermansen, Kurt David Hermansen for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

In this appeal Shawn Woodall challenges the trial court's order revoking his probation.  He argues that the statute governing probation revocation proceedings (Pen.

Code,[1] § 1203.2) violates the federal Constitution (both facially and as applied to him) because (1) it permits a warrant to be issued for a probationer's arrest unsupported by statements made by oath or affirmation, and (2) it does not require a preliminary probable cause hearing before a final revocation hearing as mandated by the United States Supreme Court in *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*). We reject these contentions and affirm the judgment.[2]

FACTUAL AND PROCEDURAL BACKGROUND

A. *Probation Grant*

On September 29, 2011, defendant (representing himself) pled guilty to attempted possession of a controlled substance (Oxycodone) for sale, in exchange for a promise of a one-year sentence. At a sentencing hearing on December 12, 2011, the prosecutor told the court (Judge Melinda Lasater) that defendant had expressed an interest in participating in the reentry drug court program; the prosecutor believed defendant was eligible for the program; and defendant had been offered a one-year stayed sentence and probation grant conditioned on his participation in the program. Based on these representations, the court scheduled a sentencing hearing before Judge Desiree Bruce-Lyle, who was presiding over the reentry drug court program.

---

[1]    Subsequent unspecified statutory references are to the Penal Code.

[2]    Given our holding, we need not address the Attorney General's assertion that defendant is collaterally estopped from challenging the constitutionality of section 1203.2. We deny as moot the Attorney General's motion for judicial notice of a previous appellate decision concerning defendant.

2

On January 3, 2012, the drug court suspended execution of a one-year prison sentence; placed defendant on three years' formal probation; and ordered him to complete a drug court program as a condition of probation. With defendant's agreement, counsel was appointed for purposes of representing him during his participation in drug court. The court scheduled a review hearing for January 9, 2012.

Defendant was released from jail on January 4 or 5, 2012, and he appeared at the January 9 review hearing accompanied by a drug court team member. Defendant told the drug court that he has a "life-threatening illness" and he was having trouble getting his medication. The court instructed the drug court team member to assist defendant with this matter, and told defendant to "lean on the folks at treatment" and "let them know what you need help with." The court set the next review hearing for January 17, 2012.

B. *Initial Probation Revocation Proceedings*

On January 11, 2012, two days after the January 9 review hearing, defendant left the drug court treatment program without letting anyone from the program know where he was going or where he was residing.[3]

On January 12, 2012, the drug court issued an order finding that defendant was in violation of the reentry court participant contract because he had "failed to fulfill terms of the treatment program." The court summarily revoked his probation and issued a bench warrant for his arrest.

---

[3]   The record does not indicate the precise nature of defendant's drug court treatment program, but it appears he was residing at a drug treatment residence with outpatient privileges.

On February 18, 2012 (over one month after he had absconded), defendant was arrested. On February 27, 2012, he appeared in custody before the drug court represented by counsel. The court informed defendant that it and the drug treatment team had read a letter he had submitted and discussed whether he should be permitted to continue in the drug treatment program. The court told defendant he could personally address the court and say "everything that you want the court and the [treatment] team to consider."

Defendant told the court that he suffers from Parkinson's disease and a seizure disorder, and based on the court's earlier order the drug treatment team had given him advice on where to go to get the life-saving medications he needed for his terminal illness. Defendant described his repeated efforts to get his medications at various facilities, which proved fruitless due to a delay in getting his medical records. He also told the court his medications cost about $1,000 monthly; he could not afford to pay for them; he was "just stressed out" and left the drug treatment program; and his girlfriend ultimately went across the border and obtained some medication for his illness.

The court responded that defendant had been in the program for three days; he then decided to "go do whatever it is [he] felt [he] needed to do"; he had been gone since January 11; and if he had intended to stay with the program he would have contacted someone in the program after he started getting his medication from across the border. The court concluded that defendant was not suitable for the reentry drug court program, terminated him from the program, and revoked his probation.

At the conclusion of the February 27 hearing, defendant (reinstated to pro. per. status) objected to the "summary revocation process" and requested an evidentiary

4

hearing as required by *Morrissey*. The court set the matter for hearing on March 23, 2012.

### C. *Final Probation Revocation Proceedings*

To assist the court at the upcoming evidentiary hearing, defendant's probation officer (Rico Boco) interviewed defendant at the jail on March 9, and interviewed defendant's drug court treatment counselor (Jack Boyce) on March 13. Defendant told Boco that he left the drug treatment program because he " 'panicked' " when he did not have his medications and felt he " 'could not get help anywhere' "; he went to Mexico about 10 times to get medication because the cost was lower; and he " 'had to do whatever it took to save [his] life.' " Drug counselor Boyce confirmed defendant's unsuccessful efforts to get his medications at two medical facilities. After these two failed attempts, on January 11, 2012 (the day defendant absconded from the program), Boyce suggested that defendant go to the University of California San Diego hospital emergency room; however, when Boyce later contacted the hospital he was told it had no record of defendant's arrival at the hospital.

After interviewing defendant and Boyce, Boco prepared a supplemental probation report setting forth the alleged probation violations. The report stated defendant had violated probation by absconding from the reentry drug court program on January 11, 2012, and by leaving San Diego County and traveling to Mexico without the probation officer's permission.

5

### 1. *March Hearing*

Prior to the scheduled March 23 evidentiary hearing, defendant filed pleadings raising facial and as-applied constitutional challenges to the probation revocation procedures set forth in section 1203.2, claiming that the *Morrissey* due process requirements had not been satisfied. At the March 23 hearing, the trial court considered his constitutional claims and ruled the *Morrissey* due process safeguards were "inherently present" in section 1203.2. Further, the court stated the upcoming formal revocation hearing, which would afford defendant an opportunity to call witnesses and present evidence, sufficed to protect his due process rights. The court granted defendant's request for a continuance based on his claim that he had not received a copy of the supplemental probation report until that morning. The evidentiary hearing was reset for April 6, 2012, and thereafter the hearing was continued to April 17, 2012, at defendant's request so he could reissue a subpoena that was defective.

### 2. *April Evidentiary Hearing*

For purposes of the April evidentiary hearing, the parties stipulated that defendant suffered from a painful medical condition and that he had been prescribed medication. The court considered Boco's supplemental probation report and heard testimony from Boco (called by the prosecution), drug counselor Boyce (called by defendant), and defendant. During his testimony Boco reiterated the probation violations and the explanations provided by defendant as set forth in the supplemental probation report. Boyce confirmed that defendant told him he was concerned because he did not have the medications he needed for his illness, and Boyce tried to help him get his medications.

Testifying on his own behalf, defendant admitted the probation violation allegations, stating he left the country because he was sick and needed his medications. He acknowledged he made a mistake, and requested that the court consider his problem getting his medications as a mitigating factor for his probation violations. The prosecutor argued that it was uncontroverted that defendant violated his probation terms, and although he may have a medical condition requiring medication, his conduct showed he was a "manipulative person" who would adhere only to those terms and conditions that he chose to follow.

The court stated that although it empathized with defendant's medical condition, it did not find his condition a sufficient excuse for violating his probation conditions. The court assessed that defendant did not give the treatment program members sufficient time to attempt to help him address his medical condition, and that his focus was "on getting medication and doing treatment his way." The court concluded he was no longer appropriate for the drug court program; revoked his probation; and ordered execution of the one-year sentence.

## DISCUSSION

Defendant does not dispute that there were substantive reasons that support the court's decision to revoke his probation. Rather, he challenges the court's order on procedural grounds, raising facial and as-applied constitutional challenges to the statute governing probation revocation (§ 1203.2).

7

## I. *Lack of Sworn Statement for Arrest Warrant*

To effectuate the arrest of a probationer who has violated probation, section 1203.2 provides: (1) a probation officer or peace officer may arrest a probationer based on probable cause to believe he or she has violated a probation condition, or (2) a court may issue a warrant for the arrest of a probationer.[4] Typically, a court will issue a bench warrant for the probationer's arrest when the authorities report to the court that a probation violation has occurred. (See, e.g., *People v. Hawkins* (1975) 44 Cal.App.3d 958, 961-962 & fn. 1, 966; *People v. Stephens* (1968) 266 Cal.App.2d 661, 664, fn. 1.) There is nothing in the express language of section 1203.2 requiring that the report to the court be made by oath or affirmation. (See *People v. Stephens, supra*, at p. 664, fn. 1.) To decide whether a sworn statement is required as a matter of federal constitutional due process, we first review court decisions evaluating the constitutional principles governing warrants in the context of probationers.

### A. *The Warrant Clause Vis-à-Vis Probationers*

The warrant clause of the Fourth Amendment states that "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th amend., italics added.) The United States Supreme Court has stated that if a warrant is

---

4    Section 1203.2, subdivision (a) states that if a probation officer or peace officer has "probable cause to believe that the [probationer] is violating any term or condition of his or her supervision, the officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the [probationer] and bring him or her before the court or the court may, in its discretion, issue a warrant for his or her rearrest."

" 'constitutionally required, the requirement cannot be flexibly interpreted to dispense with the rigorous constitutional restrictions for its issue.' " (*Griffin v. Wisconsin* (1987) 483 U.S. 868, 878 (*Griffin*); *Nathanson v. United States* (1933) 290 U.S. 41, 47.)

However, the high court has established that probationers are not entitled to the same level of search and seizure protection as other citizens: "A State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements. Probation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.' . . . [P]robationers . . . do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' " (*Griffin, supra*, 483 U.S. at pp. 873-874.) The restrictions placed on probationers are designed to rehabilitate and protect the community from harm; these goals "require and justify the exercise of supervision to assure that the restrictions are in fact observed"; and this supervision "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." (*Id.* at p. 875; accord, *Samson v. California* (2006) 547 U.S. 843, 853 ["this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerable under the Fourth Amendment"].) Further, by virtue of specified release conditions and statutory enactments, supervised released offenders have reduced expectations of privacy and liberty that permit a correlative reduction in the traditional

9

search and seizure protections.  (*Samson v. California, supra*, 547 U.S. 843 at p. 852; *Evans v. State* (2012) 318 Ga.App. 706 [734 S.E.2d 527, 532]; *Washington v. Olson* (2011) 164 Wash.App. 187 [262 P.3d 828, 829, 831].)

Given the government's substantial interest in monitoring released offenders and the diminished privacy and liberty expectations of supervised releasees, the Fourth Amendment's warrant and probable cause protections have been lessened for such releasees in a variety of contexts.  For example, the courts have found no Fourth Amendment violations in state procedures which:  permit home searches or arrests without a warrant and based on reasonable suspicion rather than probable cause (*Griffin, supra*, 483 U.S. at pp. 872-873, 876-880; *U.S. v. Knights* (2001) 534 U.S. 112, 118-112; *Evans v. State, supra*, 734 S.E.2d at p. 532); permit warrantless searches without cause as a condition of parole or probation (*Samson v. California, supra*, 547 U.S. at pp. 846-855; *People v. Medina* (2007) 158 Cal.App.4th 1571, 1575-1577); and permit warrantless searches and arrests based on information communicated between probation and police departments (*Griffin, supra*, 483 U.S. at pp. 871, 879-880; see *U.S. v. McCarty* (10th Cir. 1996) 82 F.3d 943, 947).  Directly on point here, the courts have also found no federal constitutional impediment to arrests of probationers (or other supervised releasees) based on warrants that are not supported by sworn facts. (*People v. Glenn-Powers* (2012) 296 Mich.App. 494 [823 N.W.2d 127, 133] (*Glenn-Powers*); *Sherman v. U.S. Parole Comm*. (9th Cir. 2007) 502 F.3d 869, 883-884 (*Sherman*); *State v. Barker* (2011) 162 Wash.App. 858 [256 P.3d 463, 465]; *Washington v. Olson, supra*, 262 P.3d at pp. 829-831; *U.S. v.*

10

*Collazo-Castro* (1st Cir. 2011) 660 F.3d 516, 523; *U.S. v. Garcia-Avalino* (5th Cir. 2006) 444 F.3d 444, 447.)

In *Griffin*, the United States Supreme Court concluded that a warrant was not necessary to permit a search of a probationer's home because the need for a warrant "would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct, . . . and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create . . . ." (*Griffin, supra*, 483 U.S. at p. 876.) The courts have applied the *Griffin* principle dispensing with the *search warrant* requirement for probationers to also dispense with the *arrest warrant* requirement for probationers or other supervised released offenders. (*Glenn-Powers, supra*, 823 N.W.2d at p. 133; *Sherman, supra*, 502 F.3d at pp. 883-884.) And, the courts reason that when an arrest warrant is not constitutionally required *at all*, it follows that a state's use of an *unsworn* warrant does not run afoul of the federal Constitution. (*Glenn-Powers, supra*, at p. 133; *Sherman, supra*, at pp. 883-884.)

In *Glenn-Powers*, the court cited *Griffin*'s holding dispensing with the warrant requirement for the search of a probationer's home, and concluded: "If the Fourth Amendment does not require a warrant to search a probationer's home, then it is not unreasonable to conclude that it does not require a warrant to arrest a probationer. . . . As such, the oath or affirmation requirement generally applicable to warrants does not apply

11

to a warrant for the arrest of a probationer. [¶] . . . [¶] . . . *[I]t does not matter whether the arrest warrant in this case was unsworn because it was unnecessary for there to be a sworn arrest warrant*." (*Glenn-Powers, supra*, 823 N.W.2d at p. 133, italics added.)

Similarly, the *Sherman* court reasoned that warrantless arrests of parole violators are constitutionally valid because the full panoply of constitutional rights does not apply to parolees, and when a parole officer reasonably believes a parolee is in violation of parole, the public interest in apprehending the parole violator outweighs the parolee's privacy interest. (*Sherman, supra*, 502 F.3d at pp. 883-884.) The *Sherman* court concluded that "[b]ecause searches and seizures of parolees are generally not subject to the requirements of the Warrant Clause, we conclude that the Fourth Amendment does not require an administrative parole violator warrant to be supported by oath or affirmation." (*Id*. at p. 884; accord, *State v. Barker, supra*, 256 P.3d at p. 465.)

## B. *Analysis*

We agree with the analysis and holding in the above cases. Just as the warrant clause is inapplicable to the search of a probationer's home, it is inapplicable to the arrest of a probationer. A probationer, by the very nature of the probation grant, is on notice that he or she is subject to the supervision of the government and that the liberty granted by the government is conditioned on compliance with probation conditions. To effectively supervise a probationer, the government needs to be able to expeditiously arrest the probationer in the event of noncompliance with probation conditions. Considering the government's need to act expeditiously while monitoring the probationer and the probationer's reduced expectation of liberty, we conclude a probationer falls

12

outside the ambit of the warrant clause.  Hence, in the event a warrant is used to arrest a probationer, the warrant need not comply with the oath or affirmation provision of the warrant clause.

To support that a sworn warrant is required, defendant cites *U.S. v. Vargas-Amaya* (9th Cir. 2004) 389 F.3d 901.  In *Vargas-Amaya*, the Ninth Circuit interpreted a federal statute requiring that a warrant must be issued before the expiration of a supervised release term to retain the court's jurisdiction over the defendant after the expiration of the supervised release term.  (*Id.* at p. 903.)  The *Vargas-Amaya* court concluded that based on both the legislative intent and federal constitutional principles, the warrant mandated by the statute must be under oath or affirmation as required by the warrant clause.  (*Id.* at pp. 904-907.)  However, the court noted that some searches and seizures of probationers may be made without a warrant, and stated it was ruling only on the issue of whether the court retained jurisdiction after the expiration of the supervised release term, and it was not addressing whether the releasee's arrest "was otherwise a valid warrantless arrest." (*Id.* at pp. 906-907 & fn. 5.)  Given the narrow context of *Vargas-Amaya*, courts (including the Ninth Circuit) have concluded that its holding should not be extended to other circumstances.  (*Sherman, supra*, 502 F.3d at pp. 884-885; *U.S. v. Garcia-Avalino, supra*, 444 F.3d at pp. 444-447; *State v. Barker, supra*, 256 P.3d at pp. 464-465;

13

*Washington v. Olson, supra*, 262 P.3d at pp. 829-830.)  Likewise, we do not find *Vargas-Amaya* persuasive here.[5]

The inapplicability of the warrant clause to a probationer does not mean a probationer may be arrested without limitation under any circumstances.  "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search [or seizure] is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy [or liberty] and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' "  (*U.S. v. Knights, supra*, 534 U.S. at pp. 118-119; *People v. Schmitz* (2012) 55 Cal.4th 909, 921.)  Under section 1203.2, the arrest of a probationer requires probable cause to believe he or she is violating the terms of probation, as determined by a probation or police officer or by a court that receives information from the authorities to this effect.  Defendant has presented no argument or information to show that the statute does not reasonably balance the probationer's conditional liberty interest with the state's need to respond in an expedient fashion to a probationer's noncompliance with the terms and conditions of probation.

---

5     Defendant also cites *People v. Palmer* (1989) 207 Cal.App.3d 663 for the proposition that a warrant issued for a violation of a court order that is not committed in court (an indirect contempt) must be supported by a sworn affidavit.  *Palmer* does not concern a probationer and provides no guidance on whether the warrant clause can constitutionally be dispensed with for probationers.

14

## II. *Preliminary Probable Cause Hearing*

Defendant also argues that section 1203.2 is unconstitutional (facially and as applied) because, contrary to the dictates of *Morrissey*, it allows for a single revocation hearing and does not require a preliminary probable cause hearing (or its functional equivalent) prior to a final revocation hearing. We first summarize relevant law concerning *Morrissey*, and then turn to defendant's facial and as-applied challenges.

### A. Morrissey *and Its Progeny*

In *Morrissey*, the United States Supreme Court ruled that because parole revocation deprives a parolee of a valued conditional liberty interest, parolees are entitled to at least a minimal level of procedural due process protection before revocation of their parole. (*Morrissey, supra*, 408 U.S. at pp. 480-483, 488-489.) In *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 781-782, the high court held that these due process protections applied to probationers as well.

*Morrissey* ascertained that there were two steps in a revocation decision: a factual determination as to whether the parole conditions have been violated, and a discretionary determination as to whether the violations warrant revocation of parole and return to prison. (*Morrissey, supra*, 408 U.S. at pp. 479-480, 483-484.) *Morrissey* noted that there is typically a substantial time lag between the parolee's arrest and the eventual determination that parole should be revoked (as well as a possible geographic distance between the place of violation and the place of incarceration) and for this reason there should be a timely preliminary hearing to determine whether there is probable cause to

15

believe there has in fact been a parole violation, followed by a final revocation hearing where the ultimate discretionary revocation decision will be made. (*Id.* at pp. 484-489.)

*Morrissey* stated the preliminary probable cause hearing should be conducted "as promptly as convenient after arrest while information is fresh and sources are available," and the probable cause determination should be made by an independent officer (judicial or administrative) rather than by the parole officer who made the initial decision. (*Morrissey, supra*, 408 U.S. at pp. 485-486.) *Morrissey* delineated several basic due process requirements for the probable cause hearing, including the parolee should be given notice of the purpose of the hearing and the alleged violations; the parolee should be allowed to speak and present evidence; and the hearing officer should make a record, even if informal, that includes "a summary, or digest" of what occurs at the hearing and the reasons for the determination and the evidence relied on. (*Id.* at pp. 486-487.)

After the preliminary probable cause hearing, "if it is desired by the parolee" the hearing officer should conduct a final revocation hearing where the parolee can seek to show there was no violation and present mitigating evidence to support that the violation does not warrant revocation. (*Morrissey, supra*, 408 U.S. at pp. 487-488.) The hearing officer should make a final evaluation of any contested facts and consider whether the facts warrant revocation. (*Id.* at p. 488.) Due process protections should again be provided to the parolee, including written notice of the claimed violations; disclosure of the evidence against the parolee; an opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine witnesses;

a neutral and detached hearing body (which need not be a judicial body); and a written statement of the evidence relied on and reasons for revoking parole. (*Id.* at pp. 488-489.)

The *Morrissey* court emphasized that it was not attempting "to create an inflexible structure for parole revocation procedures" adopted by the states. (*Morrissey, supra*, 408 U.S. at p. 490.) It noted that the interests of both the state and the parolee are furthered by "an effective but informal hearing" process; for example, "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (*Id.* at p. 484-485, 489.)

When applying *Morrissey*'s principles to California's probation revocation proceedings, the courts have concluded that a trial court may summarily revoke probation to preserve jurisdiction and acquire physical custody of the offender, as long as the probationer is accorded a hearing or hearings that conform to *Morrissey* standards after being taken into custody. (*People v. Vickers* (1972) 8 Cal.3d 451, 460-461 (*Vickers*); *People v. Clark* (1996) 51 Cal.App.4th 575, 581; *People v. Hawkins, supra*, 44 Cal.App.3d at pp. 965-966.) Further, although a preliminary probable cause hearing distinct from a final revocation hearing may be required in some cases, two hearings are not necessarily required in all cases. (*People v. Coleman* (1975) 13 Cal.3d 867, 894-896.) The *Coleman* court explained that *Morrissey* does not mandate the precise procedures that a state must follow, so long as " 'equivalent due process safeguards' assure that a probationer is not arbitrarily deprived of his conditional liberty for any significant period of time . . . ." (*Coleman, supra*, at p. 894.) For example, there is no need for a probable cause hearing if a final revocation hearing "with its full panoply of

17

*Morrissey* procedural rights occurs relatively soon after the probationer has been deprived of his conditional liberty," or if a preliminary hearing held on new criminal charges committed by the probationer can serve as a preliminary revocation hearing as well. (*Id.* at pp. 894-895; *People v. Hawkins, supra*, 44 Cal.App.3d at pp. 966-967.)

### B. *Facial Challenge*

Section 1203.2 requires that a probationer be given notice of a motion to revoke probation, and provides for a hearing before a court to determine whether probation should be revoked. (§ 1203.2, subds. (a), (b).)[6]

In *Vickers*, the California Supreme Court observed that section 1203.2 "makes no provision [as required by *Morrissey*] for a preliminary determination of probable cause to believe that a violation of probation has occurred in order to warrant the detention of a probationer until a more formal hearing is had." (*Vickers, supra*, 8 Cal.3d at p. 458.)[7] Subsequently, in *People v. Amor* (1974) 12 Cal.3d 20, 30, our high court (reviewing a different statute) noted that in *Vickers* (as well as in *Morrissey*) the courts did not hold the

---

[6]    Section 1203.2, subdivisions (a) and (b) state in relevant part: "Upon such rearrest, or upon the issuance of a warrant for rearrest the court may revoke and terminate the [probation] if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of his or her [probation] . . . . [¶] . . . The court shall give notice of its motion [to revoke probation], and the probation . . . officer or the district attorney shall give notice of his or her petition to the [probationer] . . . . [¶] . . . The notice required by this subdivision may be given to the [probationer] upon his or her first court appearance in the proceeding. . . ."

[7]    Although the *Vickers* court concluded the defendant before it was not afforded the required *Morrissey* due process protections, it did not grant relief because the *Morrissey* decision was not retroactive and was filed after the defendant's probation revocation. (*Vickers, supra*, 8 Cal.3d at pp. 459, 462.)

statute under consideration to be unconstitutional "on the ground that it did not specifically spell out all the requirements of due process thereunder. The important factor in each instance was determined to be whether the minimum requirements for due process had been satisfied—not whether they were statutorily required." Finding the statute before it not to be unconstitutional, *Amor* explained that statutes " 'are to be so construed, if their language permits, as to render them valid and constitutional' "; "the fact that the statute does not expressly provide for [due process procedures] does not render it unconstitutional"; and "the [constitutional procedural] requirements . . . [may] be implied from the due process clause . . . ." (*Amor, supra*, at p. 30.)

Under the reasoning of *Amor*, there is no basis to find section 1203.2 constitutionally invalid on its face based solely on the fact that it does not spell out the requirement of a preliminary probable cause hearing. The courts have long recognized that a probationer is entitled to a probable cause hearing or its functional equivalent if he or she is to be detained for any significant period of time before a final revocation hearing. (*Coleman, supra*, 13 Cal.3d at pp. 894-895; *People v. Hawkins, supra*, 44 Cal.App.3d at p. 966; *People v. Gifford* (1974) 38 Cal.App.3d 89, 91; *People v. Andre* (1974) 37 Cal.App.3d 516, 521-522.) Given this well-established case authority, we construe section 1203.2 to impliedly require a probable cause hearing if there is any significant delay between the probationer's arrest and a final revocation hearing.

### C.  *As-applied Challenge*

Turning to the initial revocation proceeding that occurred in February, defendant contends this hearing did not satisfy the minimal due process requirements for a probable

19

cause hearing because (1) he was not provided notice of the purpose of the hearing and of the alleged probation violations, (2) no record was made of the evidence supporting the court's decision, and (3) the court formally revoked probation and ignored its duty to make a probable cause finding.

First, defendant's claim of error fails because he has not shown prejudice arising from the nature of the initial revocation proceeding in February.  (*In re La Croix* (1974) 12 Cal.3d 146, 154 ["a parolee whose parole has been revoked after a properly conducted revocation hearing is not entitled to have the revocation set aside unless it appears that the failure to accord him a prerevocation hearing resulted in prejudice to him at the revocation hearing"]; *In re Coughlin* (1976) 16 Cal.3d 52, 61 [no relief for probationer who did not show prejudice from failure to hold immediate prerevocation hearing]; *In re Winn* (1975) 13 Cal.3d 694, 698-699; *In re Marquez* (2007) 153 Cal.App.4th 1, 14; *People v. Andre, supra*, 37 Cal.App.3d at p. 522.)  Defendant does not dispute that at the final revocation hearing in April, he was provided all the procedural due process rights to which he was entitled, including the ones that he complains were missing at the February hearing.  Absent a showing of prejudice, defendant's as-applied challenge to the

20

procedures followed at the February hearing is unavailing.[8]

Moreover, even if we reach the as-applied challenge on the merits, the record refutes defendant's claim that the February hearing did not comport with the *Morrissey* standards for a preliminary probable cause hearing. The sole issue discussed at the February hearing was defendant's absconding from the drug treatment program; i.e., defendant admitted to the court that he had left the drug treatment program; he described the mitigating circumstances that gave rise to his departure; and the court responded with its assessment of his decision to leave the program. Further, defendant knew that participation in the drug treatment program was the key feature of his probation grant, as reflected by the fact that his case was transferred to drug court, he was found eligible for the drug court program, he was released from custody into the supervision of the drug treatment team members, and his case was scheduled for frequent review hearings before the drug court.

---

[8] Defendant cites *In re Valrie* (1974) 12 Cal.3d 139 to support his contention that procedural deficiencies at the February hearing require reversal. In *Valrie*, a parolee filed a writ to challenge the complete absence of a revocation hearing while he was being detained on a " 'parole hold' " pending the outcome of federal charges that gave rise to his summary parole revocation. (*Id*. at pp. 140-142.) The *Valrie* court granted relief by ordering that the parolee be released from custody, but noting that the parole board could again seek parole revocation in accordance with the *Morrissey* due process requirements. (*Valrie, supra*, at pp. 144-145.) Here, defendant was afforded the *Morrissey* due process rights at the final revocation hearing. Unlike the circumstances in *Valrie*, this is not a case where a probationer is being detained without an opportunity to contest the revocation at a hearing.

Defendant has not pointed to anything in the record suggesting that when he arrived at the February hearing he was surprised at the reason he was there or the potential consequence of his probation violation. (See *People v. Hawkins, supra*, 44 Cal.App.3d at p. 967 ["Neither the defendant nor his counsel objected that they had inadequate notice of the [probation violation] charges and thus, absent objection, we will not imply inadequate notice from a record which is silent as to exactly how the defendant was given notice of the charges."].) We are satisfied that prior to the February hearing, defendant knew that the alleged probation violation was his absconding from the drug treatment program and he knew that the purpose of the hearing was to consider termination from the drug treatment program and revocation of probation.

With respect to the second probation violation based on defendant's unauthorized departure from the county, this was a fact that was discovered by the probation department *after* the February hearing when the probation officer interviewed defendant at the jail in preparation for the full evidentiary hearing requested by defendant. For purposes of the February hearing, there can be no due process violation arising from the failure to disclose a factual allegation that had not been discovered at the time of the February hearing. Moreover, the allegation that defendant had absconded from the program provided probable cause to justify defendant's detention pending the final revocation hearing, and the failure to provide notice of a *second* allegation at the probable cause stage does not constitute error under *Morrissey*. (See *In re Winn, supra,* 13 Cal.3d at p. 698.)

Contrary to defendant's claim, a record was made of the evidence underlying the court's decision at the February hearing. The proceeding was recorded by a court reporter, and the reporter's transcript provides a written record of the matters discussed and the reasons for the court's decision. This recordation complies with *Morrissey's* directive that the hearing officer should create a summary of the evidence and state the reasons for the decision. (*People v. Hawkins, supra*, 44 Cal.App.3d at pp. 967-968 ["court reporter's transcript of the [parole revocation] hearing, in form and substance, met the requirement of 'a written statement by the factfinders as to the evidence relied on and the reasons for revoking the parole' "].)

Finally, there was no due process violation based on the court's ruling at the February hearing that it was revoking probation rather than ruling that there was a probable cause showing of a probation violation. It was undisputed that defendant had violated probation by absconding from the treatment program; thus the purpose of the probable cause hearing was satisfied by defendant's admission of the factual basis for the violation. Further, the court's ruling that probation should be revoked implicitly included a finding that a probation violation had occurred.

Defendant's constitutional challenges to section 1203.2 and the procedures used in his case have no merit.

DISPOSITION

The judgment is affirmed.

HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


O'ROURKE, J.

24

Filed 6/3/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHAWN JAMES ALLEN WOODALL,<br><br>    Defendant and Appellant. | D062005<br><br>(Super. Ct. No. SCD236538)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion filed May 13, 2013, is ordered certified for publication.

The attorneys of record are:

Law Office of Kurt David Hermansen and Kurt David Hermansen for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

_____
                                            HALLER, Acting P. J.

Copies to:  All parties