## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re WAYNE DENSON<br><br>   on Habeas Corpus. | G048279<br><br>(Super. Ct. Nos. 11HF0576 & R00513)<br><br>O P I N I O N |

Original proceedings; petition for a writ of habeas corpus to challenge an order of the Superior Court of Orange County, Arthur K. Sawyer, Vicki L. Hix, and Christopher J. Evans, Temporary Judges.  (Pursuant to Cal. Const., art. VI, § 21.) Petition granted.

Frank Ospino, Public Defender, Jean Wilkinson, Chief Deputy Public Defender, Mark S. Brown, Assistant Public Defender and Miles David Jessup, Deputy Public Defender, for Defendant and Petitioner.

Nicholas S. Chrisos, County Counsel, Adam C. Clanton and Nicole M. Walsh, Deputy County Counsel for Real Party in Interest, Orange County Probation Department.

The Criminal Justice Realignment Act of 2011 (Stats. 2011, ch. 15, § 1) (the Realignment Act), which, together with subsequent related legislation, significantly changed the sentencing and supervision of convicted felons. The Legislature's stated purpose for the Realignment Act "'is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' [Citation.]" (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48-50.)

The Postrelease Community Supervision Act of 2011 (Pen. Code, § 3450 et seq.)[1] (PRCS) was a small part of the Realignment Act. The Legislature's stated purpose for PRCS was to reinvest California's criminal justice resources to improve public safety. (See § 3450, subd. (b)(4).) The Legislature implemented this policy by transferring postrelease supervision of certain felons to local correction programs that utilize enhanced supervision strategies, evidence-based practices, and community-based punishment. (§ 3450, subd. (b)(5).) A person is released to PRCS subject to conditions (§ 3453), and if the person violates one or more conditions, he or she can be subject to punishment (§ 3450, subd. (b)). PRCS authorizes "flash incarceration . . . as one method of punishment for violations of an offender's condition of [PRCS]." (§ 3454, subd. (b).) Flash incarceration is a brief stint in jail not exceeding 10 days. One of the conditions of release into PRCS is the person must waive the right to judicial review before flash incarceration is imposed. (§ 3453, subd. (q).)

Petitioner Wayne Denson filed a petition for writ of habeas corpus alleging his six-day flash incarceration violated his federal constitutional right to due process. As we explain below, we agree Denson's due process rights were violated but not because of the flash incarceration. Denson's due process rights were violated because the arrest warrant was invalid and his arrest was unreasonable. The petition is granted.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

FACTS

In March 2011, a first amended complaint charged Denson with 13 theft related offenses (§§ 470, subd. (a), 459, 460, subd. (b), 530.5, subd. (a), 487, subd. (a), 664, 496, subd. (a)), and nine counts of displaying or possessing a forged driver's license or identification card (§ 470a). The complaint also alleged he suffered four prior prison terms within the meaning of section 667.5, subdivision (b).

In May 2011, Denson pled guilty to all the charges and admitted the prior prison allegations. The next month, the trial court sentenced Denson to prison for two years on one of the counts and either stayed (§ 654), or ran the sentences concurrent on the remaining counts. The court awarded Denson 188 days credit.

On September 15, 2011, Denson was advised of, appeared to understand, and signed a "Notice and Conditions of Post Release Community Supervision" (the Notice of PRCS). The Notice of PRCS advised Denson that pursuant to section 3450 he was "subject to community supervision provided by a county agency for a period not exceeding three years." The Notice of PRCS's conditions included an extradition waiver, psychiatric evaluation if necessary, search conditions, and a detainer by another jurisdiction condition. The Notice of PRCS advised Denson he had to "report to [his] [s]upervising county agency within two working days following [his] release." The Notice of PRCS added: "You will inform your supervising county agency of your residence, employment, education, or training. Any change or anticipated changes in residence, employment, education, or training shall be reported to your supervising county agency in advance. You shall inform the supervising county agency of new employment within [three] business days of that entry." The Notice of PRCS included travel restrictions, a prohibition against committing any criminal conduct, and a prohibition against owning, using, or possessing any weapons. The Notice of PRCS states: "FLASH INCARCERATION: You agree to waive any right to a court hearing prior to the imposition of a period of 'flash incarceration' in a county jail of not more

3

than 10 consecutive days for any violation of your postrelease supervision conditions. You agree to participate in rehabilitation programming as recommended by the supervising county agency." The Notice of PRCS concludes: "You shall sign this agreement and any special conditions imposed upon you by the supervising county agency or the court. If you refuse to sign these or any other conditions impose [*sic*] upon you, the supervising county agency may refer the case to a court for revocation proceedings."

Denson signed a second Notice of PRCS on February 3, 2012, indicating it was effective the following day. Denson remained in prison until March 2012, when he was extradited to Multnomah County, Oregon for an open case and remained in custody there.

On April 4, 2012, Orange County Deputy Probation Officer Juan Rodriguez spoke with Ronee Hunter of the Multnomah County Pretrial Services Program. Rodriguez told Hunter that if Denson was released, he was expected to report to the Orange County Probation Department because he was not authorized to live in Oregon. Denson was released from custody in Oregon on April 14, 2012, on pretrial custody supervision.

Denson remained in Oregon and from April 17, 2012, to December 19, 2012, where he was in the Multnomah County Close Street Supervision Program under the supervision of Corrections Deputy Larry Wenzel. At their initial meeting that April, Denson informed Wenzel of his criminal history, he was on probation in California, and he was living with his mother in Eugene, Oregon.

Meanwhile, on May 11, 2012, Orange County Deputy Probation Officer Anthony Wade called Wenzel and informed him that Denson was required to report to the Orange County Probation Department when he was released from custody in Oregon. Based on Wenzel's prior conversation with Denson, Wenzel informed Wade that Denson

4

had no intention of reporting to the Orange County Probation Department. Wenzel subsequently spoke with Denson, who said he was not required to report to the Orange County Probation Department.

On May 14, 2012, Wade, without any direct communication with Denson, filed a "Petition for Warrant of Arrest Community Supervision," (the Petition) for Denson. The next day, there was a hearing on the Petition before Judicial Hearing Officer Arthur K. Sawyer. After reading and considering the Petition, Sawyer found good cause to issue the no bail arrest warrant for Denson. Sawyer signed the arrest warrant, and it was processed.

On December 17, 2012, Denson called the Orange County Probation Department and spoke with Deputy Probation Officer Thomas Hinkle. Denson told Hinkle that he was in Oregon, he was going to be placed on probation, and he would be allowed to travel to Orange County. Hinkle advised Denson to turn himself in on the outstanding arrest warrant and gave him Rodriguez's telephone number.

Two days later, Denson was transferred to the Multnomah County Parole and Probation Office where he was under the supervision of Deputy Probation Officer Russ Martin, who had the authority to give Denson permission to leave Oregon. The same day, Denson prepared the "Offender's Application for Interstate Compact Transfer." Denson requested his probation be transferred from Oregon to California and stated he intended to live with Kathleen S. at a specified address in the City of Orange.

On December 27, 2012, the reporting instructions were issued indicating Denson had to report by telephone to the Orange County Probation Department immediately upon arrival in Orange County on January 4, 2013. Martin called Denson and informed him of the reporting instructions, but Denson indicated he might have to delay his flight to California. Denson was caring for his mother and had to remain with her in Oregon until his brother arrived.

5

On January 3, 2013, Denson again spoke with Martin and informed him he could not leave for California until February 15, 2013.

In a letter dated February 12, 2013, C. Lane Borg, Denson's public defender in Oregon, wrote Denson a letter. Borg explained that as of December 2012, his case was closed. He explained that "[o]nce our [p]robation [d]epartment clears you under the Interstate Compact on Probation and Parole, you will be legally able to travel to California."

On February 21, 2013, Denson spoke with Martin and again postponed his departure date, this time to March 1, 2013, at the earliest.

On March 13, 2013, Rodriguez and Martin spoke on the telephone about the arrest warrant. Martin told Rodriguez that he did not know there was a warrant for Denson's arrest or he would have ordered Denson to report to the Orange County Probation Department earlier. Martin informed Rodriguez that he gave Denson one week to report to the Orange County Probation Department.[2] The same day, Martin spoke with Denson, who told Martin that he was angry about the arrest warrant. Martin advised Denson to call Rodriguez and call Martin the following day. Rodriguez also spoke with Denson that day and told him to report to the Orange County Probation Department by March 31, 2013.

The next day, Denson called Martin and told him that he was going to report to the Orange County Probation Department no later than March 31, 2013. Denson was angry and wanted to argue about the Orange County Probation Department. Almost two weeks later, Denson called Martin and informed him he would leave for California during the first week in April.

---

[2] Orange County Public Defender Investigator Spring Jaentsch declared she spoke with Martin on April 11, 2013. Martin told her that in his March 13, 2013, conversation with Rodriguez, Rodriguez requested Martin order Denson to return to the Orange County Probation Department within one week, and Martin responded that was not possible because of processing.

6

In a report dated March 27, 2013, Martin provided the factual history of the case, including that when Denson first reported to him in December 2012, Denson provided him with two addresses: A Eugene, Oregon address of his mother who Denson was caring for; and an Orange, California address that was his permanent address. The report states: "An Interstate Compact Investigation was sent to the State of California on [December 19, 2012], it was recently denied as . . . Denson has still been caring for his mother in Eugene, Oregon. [¶] . . . Denson has been restricted to the State of Oregon due to his pending charges (now adjudicated). He was ordered to remain in Oregon while his Interstate Compact Application was processed. According to his case plan, he [h]as been approved to return to California between [April 5, 2013,] and [April 12, 2013]." The report stated his travel permit and compact application would be resubmitted and recommended Denson leave Oregon for California on April 5, 2013. The report ended by stating Denson had maintained weekly contact with Martin as required.

Orange County Deputy Public Defender Terri Bianchi represents Denson. On April 4, 2013, in anticipation of Denson arriving by April 9, 2013, Bianchi calendared a court hearing on April 9, 2013, to address the outstanding arrest warrant. Denson left Oregon for Orange County on or about April 5, 2013.

On April 9, 2013, Rodriguez left Denson a voicemail message reminding him there was a warrant for his arrest, he was to report to the Orange County Probation Department, and he was required to provide his current residence address. That same day, upon Bianchi's request, Commissioner Vickie Hix trailed the matter to the next day, April 10, 2013, and ordered the arrest warrant to remain. Denson arrived in Orange County later that night, and he left Rodriguez a voicemail message indicating he was in Anaheim or Orange.

The next morning, Rodriguez spoke to Denson on the telephone. Rodriguez asked Denson for his residential address, but Denson said he did not have one because he was "'hotel hopping.'" Rodriguez asked where he was currently staying and

7

told him to report when he moved to a new motel. Denson refused to report his current location. Denson told Rodriguez he had a court hearing at 8:30 a.m. that morning concerning the arrest warrant and he was on his way to court. Because it was already 8:30 a.m., Rodriguez believed Denson did not intend to attend the hearing. Rodriguez told Denson to report to the Orange County Probation Department, which he did. As he waited to speak with Rodriguez, two Orange County Sheriff's Department deputies arrested him and took him to jail. Denson was booked and told he was receiving a six-day flash incarceration. Denson was provided only a booking sheet, which did not advise him of the basis for the flash incarceration.

Early that afternoon, Bianchi called Rodriguez and inquired why Denson had been arrested when Rodriguez knew Denson intended to appear in court to address the arrest warrant. Rodriguez replied, "'I took care of the warrant' by having him arrested." Rodriguez told Bianchi he had imposed a flash incarceration because Denson had not provided him with a residence address.

Orange County Public Defender Miles Jessup also called Rodriguez, who referred him to Rodriguez's supervisor, Orange County Probation Officer Scott Chandler.[3] Chandler told Jessup that Denson had been flash incarcerated for six days. When Jessup requested "all . . . documentation" justifying the flash incarceration, Chandler said Jessup would have to file a subpoena. Chandler explained the following policies governing notice of flash incarceration: (1) When the Orange County Probation Department takes a supervisee into custody, it gives the supervisee notice, the reason(s) and duration, immediately; and (2) when an outside agency takes a supervisee into custody, the Orange County Probation Department serves the notice as soon as possible and ideally within one business day. According to Jessup, Chandler would not commit to

---

[3] Jessup did not prepare a declaration in this case. But he did prepare the petition for writ of habeas corpus and verified all facts not supported by citation to evidence are true of his own personal knowledge.

providing Denson notice by the next morning. Chandler told Jessup that Denson was arrested for failing to provide Rodriguez with a residence address and because he was arrested without substantial personal property, he must be residing somewhere.

About an hour later, there was a hearing before Commissioner Christopher Evans. Denson's counsel, Bianchi, requested the trial court set a hearing to determine the following three issues: (1) whether there was probable cause to arrest Denson (§ 3453, subd. (s)); (2) whether Denson's due process rights were violated; and (3) an order to show cause to validate the flash incarceration. The prosecutor argued the court did not have jurisdiction to rule on the validity of the flash incarceration, the Orange County Probation Department was justified in issuing an arrest warrant, and the flash incarceration was proper. Analogizing to parole, the court denied Denson's request citing separation of powers. The court did grant Denson's request to set a hearing the following day for "a P[R]CS supervision modification with a [r]emoval [o]rder."

Sometime that same day, Rodriguez wrote a letter to the Orange County Superior Court, department C-58. He recited the facts concerning the arrest warrant and Denson's arrest. The letter stated: "On [April 10, 2013], the warrant was served by the Orange County Sheriff's Department . . . and [Denson] was booked into the Orange County Jail . . . ." The letter added the "intermediate sanctions as authorized by . . . section 3454[, subdivision](c)[,] are appropriate responses to the alleged violations and that [c]ourt intervention is not needed at this time." Rodriguez's letter requested the trial court recall the arrest warrant.

In a request for detainer subsequent to the arrest, Rodriguez stated the Orange County Sheriff's Department arrested Denson for violating PRCS and requested Denson be detained on a six-day flash incarceration because he had "not provided an address of residency and absconded P[R]CS supervision."

On Thursday, April 11, 2013, there was another hearing before Commissioner Evans. Denson was present with his counsel, Bianchi. Bianchi requested

9

Denson be released from his six-day flash incarceration pending filing of a petition for writ of habeas corpus. The district attorney opposed that request. The court denied the request, again citing separation of powers. Bianchi requested the basis for the flash incarceration in writing, and the trial judge said he thought it was for not providing a residence address.[4] A representative from the Orange County Probation Department indicated Denson would be released from jail on Monday, April 15, and she would facilitate written notice to Bianchi and/or Denson as soon as possible.

Orange County Deputy Probation Officer Neal Heidenreich visited Denson in jail the next day, on April 12, 2013. Heidenreich brought a document entitled, "'Notice of Flash Incarceration'" (the Notice), which contained a description of Denson's violations, the start date, the duration, and an area for Denson to contest the PRCS violation and request administrative review. Heidenreich read the Notice to Denson and advised him of his right to an administrative hearing. Denson declined the opportunity to contest his flash incarceration, and stated he would refuse to discuss the matter any further. Heidenreich noted Denson's refusals on the Notice.

That same day, Denson filed a petition for writ of habeas corpus. Denson submitted many exhibits, including declarations from Jaentsch, Bianchi, and himself. In his declaration, Denson stated Rodriguez assured him that he would not be arrested at the Orange County Probation Department. In her declaration, Jaentsch stated she spoke with Martin on April 11, 2013, and he stated Denson could not leave Oregon until sometime between April 5, 2013, and April 12, 2013. According to Jaentsch, Martin said Denson was caring for his mother and could not leave until his brother arrived. Jaentsch claimed

---

[4] Denson states that at this hearing, the Orange County Probation Department represented the bases for the flash incarceration were the arrest warrant and Denson's failure to provide a residence address. We have reviewed the transcript of the hearing, and the Orange County Probation Department made no such representation in the reported transcript.

10

Martin told Rodriguez that he had to wait for his brother. Additionally, Denson included exhibits concerning judicial hearing officer Sawyer's California State Bar history.[5]

In response to our order, the Orange County County Counsel and the Orange County Public Defender filed informal responses that same day. We immediately ordered the Orange County Sheriff's Department and the Orange County Probation Department to show cause why a writ of habeas corpus should not issue. We ordered the Orange County Sheriff's Department to release Denson immediately and stayed his remaining time to be served pending further order from this court.

The Orange County County Counsel filed a formal written return. County counsel submitted many exhibits, including declarations from Rodriguez, Wenzel, Hinkle, Martin, and Heidenreich. In his declaration, Rodriguez claimed he made no representation to Denson whether he would be arrested.

The Orange County Public Defender filed a traverse. The public defender submitted many exhibits, including declarations from Jaentsch and Bianchi. To the extent we have not discussed each of the exhibits specifically, they provide the factual background detailed above.

DISCUSSION

*Standard of Review*

"Our state Constitution guarantees that a person improperly deprived of his or her liberty has the right to petition for a writ of habeas corpus. [Citations.] Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to plead sufficient grounds for relief, and then later to prove them. 'For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence;

---

[5]     Arthur Kimball Sawyer, State Bar of California No. 59970, resigned from the State Bar of California on July 9, 1995, with charges pending, 17 years before sitting as a judicial hearing officer. Sawyer never regained his California bar membership.

11

defendant thus must undertake the burden of overturning them.  Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended.' [Citation.]

"To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and '[i]f the imprisonment is alleged to be illegal, the petition must also state in what the alleged illegality consists.' [Citation.]  The petition should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations.  [Citation.]  'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.'  [Citation.]  We presume the regularity of proceedings that resulted in a final judgment [citation], and, as stated above, the burden is on the petitioner to establish grounds for his release.  [Citations.]

"An appellate court receiving such a petition evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief.  [Citation.]  If no prima facie case for relief is stated, the court will summarily deny the petition.  If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC.  [Citations.] *'When an order to show cause does issue, it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition.*  It directs the respondent to address only those issues.'  [Citation.]  Issuance of an OSC, therefore, indicates the issuing court's preliminary assessment that the petitioner would be entitled to relief if his factual allegations are proved." (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475 (*Duvall*), original italics omitted, italics added.)

*PRCS Overview*

The PRCS authorizes flash incarcerations as punishment for violations of its conditions. Section 3450, subdivision (b)(8), defines "community-based punishment" as the following: "'Community-based punishment' means evidence-based correctional sanctions and programming encompassing a range of custodial and noncustodial responses to criminal or noncompliant offender activity. Intermediate sanctions may be provided by local public safety entities directly or through public or private correctional service providers and include, but are not limited to, the following: [¶] (A) Short-term 'flash' incarceration in jail for a period of not more than 10 days."

Section 3453 details the PRCS's 19 conditions. There are three subdivisions that are of particular relevance here. Section 3453, subdivision (h), states, "The person shall inform the supervising county agency of the person's place of residence, employment, education, or training." Section 3453, subdivision (q), provides, "The person shall waive any right to a court hearing prior to the imposition of a period of 'flash incarceration' in a county jail of not more than 10 consecutive days for any violation of his or her postrelease supervision conditions." Section 3453, subdivision (s), states, "The person shall be subject to arrest with or without a warrant by a peace officer employed by the supervising county agency or, at the direction of the supervising county agency, by any peace officer when there is probable cause to believe the person has violated the terms and conditions of his or her release."

Section 3454, subdivision (b), authorizes each supervising county agency to impose additional supervision conditions, "and determine and order appropriate responses to alleged violations," including flash incarceration in a county jail. Section 3454, subdivision (b), states, "Periods of flash incarceration are encouraged as one method of punishment for violations of an offender's condition of postrelease supervision." Section 3454, subdivision (c), provides, "'Flash incarceration' is a period of detention in county jail due to a violation of an offender's conditions of postrelease

13

supervision. The length of the detention period can range between one and 10 consecutive days. Flash incarceration is a tool that may be used by each county agency responsible for postrelease supervision. Shorter, but if necessary more frequent, periods of detention for violations of an offender's postrelease supervision conditions shall appropriately punish an offender *while preventing the disruption in a work or home establishment that typically arises from longer term revocations*." (Italics added.)

*Analysis*

Although we agree with Denson that his due process rights were violated, we do not do so based on the conclusion flash incarceration on its face violates due process. Instead, we conclude the warrant for Denson's arrest was invalid and his arrest was unreasonable.

*Arrest Warrant*

Here, based on the record before us, we conclude Denson was taken into custody based on the arrest warrant and not for the technical violation of PRCS. First, numerous telephone conversations between the Orange County Probation Department, first Hinkle and then Rodriguez, and Denson establish the Orange County Probation Department sought Denson's return pursuant to the authority of the arrest warrant. Second, when Denson arrived at the Orange County Probation Department, Orange County Sheriff's Department deputies arrested Denson, not the Orange County Probation Department. Although Rodriguez told Bianchi he had imposed a flash incarceration because Denson had not provided him with a residence address, Rodriguez also told Bianchi, "'I took care of the [arrest] warrant' by having him arrested." Finally, our conclusion is supported Rodriguez's letter to the Orange County Superior Court stating Orange County Sheriff's Department deputies arrested Denson on the arrest warrant and requesting the court recall the arrest warrant. Contrary to Denson's claim he

14

was detained for the technical violation of PRCS,[6] overwhelming evidence establishes Orange County Sheriff's Department deputies arrested Denson pursuant to the arrest warrant. Thus, we must determine whether the arrest warrant was valid. We conclude it was not.

The Legislature enacted Government Code section 71622.5, subdivision (a), to provide courts with the additional judicial hearing officers necessary to implement the Realignment Act. Government Code section 71622.5, subdivision (b), authorizes court to appoint judicial hearing officers to conduct parole revocation hearings and determine violations of conditions of PRCS, and vests judicial hearing officers with the authority to perform those duties. Government Code section 71622.5, subdivision (c)(1), provides: "A person is eligible to be appointed a hearing officer pursuant to this section if the person meets one of the following criteria: [¶] (A) He or she has been an active member of the State Bar of California for at least 10 years continuously prior to appointment. [¶] (B) He or she is or was a judge of a court of record of California within the last five years, or is currently eligible for the assigned judge program. [¶] (C) He or she is or was a commissioner, magistrate, referee, or hearing officer authorized to perform the duties of a subordinate judicial officer of a court of record of California within the last five years."

Here, the State Bar of California issued an order to show cause as to Sawyer in February 1994. The order alleged he failed to return client funds and failed to promptly pay client funds and provide an accounting. The following year, May 2, 1995,

---

[6] At oral argument, Denson's counsel confirmed he raises the following two arguments in his habeas petition: (1) That because Sawyer was not qualified to sit as a judicial hearing officer, the arrest warrant was invalid; and (2) flash incarceration violates due process. Denson's counsel, however, implored this court to decide the case based on the flash incarceration issue to provide the superior court with guidance on the issue. "An appellate court should decide a case upon grounds as narrow as possible and not reach out for bases not necessary to the disposition" of the case. (*Morris v. Superior Court* (1976) 57 Cal.App.3d 521, 534.)

15

Sawyer resigned from the State Bar of California, and the State Bar of California dismissed the proceedings without prejudice. On June 9, 1995, the California Supreme Court accepted Sawyer's resignation without prejudice to refiling disciplinary proceedings. Sawyer has not been authorized to practice law in California since 1995. Sawyer issued the arrest warrant 17 years later on May 15, 2012.

Based on Government Code section 71622.5, subdivision (c)(1), Sawyer was not qualified to be appointed as a judicial hearing officer.[7] He had not been an active member of the State Bar of California for the previous 10 years. Indeed, he had not been an active member of the State Bar of California for 17 years and 10 days. Sawyer was certainly not a superior court judge, commissioner, magistrate, or referee, nor was he eligible for the assigned judge program (Cal. Rules of Court, rule 2.812(b)(1) [presiding judge may appoint attorney to serve as temporary judge who is "member in good standing of the State Bar and has no disciplinary action pending"]). Pursuant to Government Code section 71622.5, Sawyer was ineligible to sit as a judicial hearing officer and did not have the authority to issue the arrest warrant. Therefore, his issuance of the arrest warrant for Denson was invalid.[8]

---

[7] Nor was Sawyer eligible to be appointed a judicial hearing officer according to the Orange County Superior Court's job description for judicial hearing officers. The job description states one of the minimum qualifications is, "Active membership in good standing with the State Bar of California for five years or more." (<http://agency.governmentjobs.com/occourts/default.cfm?action=viewclassspec&ClassSpecID=5432> [as of October 9, 2013].)

[8] County counsel asserts Denson has made no viable claim regarding the arrest warrant. We disagree. In his petition, Denson states Sawyer was unqualified to sit as a judicial hearing officer and his acts were unlawful. Denson supported his claim with exhibits demonstrating Sawyer is not licensed to practice law in California. Denson has made a viable claim in his petition.

16

*PRCS*

We must determine whether the arrest was lawful based on an independent ground. (*People v. Chimel* (1968) 68 Cal.2d 436, 442 [if the arresting officer had been proceeding without a warrant in arresting defendant, would the arrest have been lawful?], overruled on other grounds in *Chimel v. California* (1969) 395 U.S. 752.) The only bases independent of the arrest warrant to lawfully arrest Denson were that he absconded supervision and he failed to provide Rodriguez with a residence address when he returned to Orange County as required by the PRCS conditions. Based on the record before us, we conclude neither ground supported Denson's arrest. We look to the standard when assessing whether it is reasonable to arrest a probationer without a warrant.

"The inapplicability of the warrant clause to a probationer does not mean a probationer may be arrested without limitation under any circumstances. 'The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search [or seizure] is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy [or liberty] and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."' [Citations.] Under section 1203.2, the arrest of a probationer requires probable cause to believe he or she is violating the terms of probation, as determined by a probation or police officer or by a court that receives information from the authorities to this effect." (*People v. Woodall* (2013) 216 Cal.App.4th 1221, 1234.)

As to absconding supervision,[9] the record before us establishes Denson's supervision was legally transferred to Oregon and Rodriguez knew Denson was residing in Oregon under the supervision of the Multnomah County Parole and Probation Office. Additionally, there is evidence the Orange County Probation Department was aware

_____

[9] We recognize the basis for the arrest warrant was the fact Denson allegedly absconded supervision. Although the arrest warrant was invalid, absconding supervision was a valid basis, if true, to arrest Denson.

17

Denson remained in Oregon to care for his mother until his brother arrived. Moreover, Wade never bothered to contact Denson to inquire of his intentions before obtaining the arrest warrant. The record demonstrates Denson remained in Oregon until he was legally authorized to leave between April 5, 2013, and April 12, 2013, and he arrived in Orange County on April 9, 2013. Thus, the record is void of any evidence Denson absconded supervision.

With regard to the requirement Denson provide his residence address, the record established Denson returned to California with the intent to address the illegally issued arrest warrant. When he was in Oregon, Denson spoke with his public defender, Bianchi, and told her when he planned to arrive Orange County. Bianchi set a court hearing for Denson to address the arrest warrant. When he arrived in Orange County, Denson called Rodriguez and left him a voicemail message. When he spoke with Rodriguez the next morning, Denson told him that he was on his way to court to clear the arrest warrant and that he was "'hotel hopping.'" Although Denson did not tell Rodriguez where he was staying, Denson did repeatedly communicate with him and tell him where he was going. The evidence clearly establishes Denson returned to Orange County and intended to be in court on the morning of April 10 to clear the arrest warrant. Based on the fact Denson communicated with his public defender before arriving in Orange County and his intent to appear in court on the morning of April 10 to clear the arrest warrant, which he was upset about, we are convinced Denson would not have gone to the Orange County Probation Department unless some representation was made he would not be arrested. But that is exactly what happened when he arrived there. Based on the record before us, we conclude Denson's arrest was unreasonable. Because the arrest warrant was invalid and Denson's arrest was unreasonable, his federal due process rights were violated.

18

DISPOSITION

The petition is granted.[10]

O'LEARY, P. J.

WE CONCUR:

FYBEL, J.

THOMPSON, J.

---

[10] For the first time in his traverse, Denson states the remedy "has expanded" from that stated in his petition. He requests this court to discharge him from PRCS supervision immediately. Denson's counsel repeated this request at oral argument. We decline his invitation. Although the traverse may allege additional facts to support a claim in the petition, a habeas corpus petitioner may not raise additional issues in the traverse. (*Duvall, supra,* 9 Cal.4th at p. 478.)